**Joan K. Fuhrer, Plaintiff-Appellee, v. Richard J. Fuhrer, Defendant-Appellant.**

**Gen. No. 52,362.**

First District, First Division.

January 29, 1968.

Rehearing denied March 4, 1968.

Bloch and Bloch, of Chicago (Frank S. Bloch and Norman L. Bloch, of counsel), for appellant.

No attorney of record for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a post-divorce decree proceeding, in which the Circuit Court of Cook County entered a decree which "enrolled and established" a divorce decree entered in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois.

Defendant, Richard J. Fuhrer, appeals from the enrolling decree and from a subsequent order which modified the child support and alimony awards of the decree. Plaintiff, Joan K. Fuhrer, has filed no appearance in this court.

The divorce decree was entered in Lake County on March 15, 1965. Plaintiff, Joan K. Fuhrer, was awarded

the custody of their three minor children, and defendant was ordered to "pay the sum of $100.00 per week to the plaintiff as alimony and child support, out of which the plaintiff shall pay all expenses incurred on behalf of herself and the children; provided, however, if the present rent of $215.00 per month is reduced by reason of plaintiff and said children taking up living quarters in other than those presently used, the difference between the present rent of $215.00 and the rent of such other quarters will be subtracted from the amount of said alimony and support money."

On January 6, 1967, a decree was entered in the Circuit Court of Cook County, which found that the plaintiff and defendant are both residents of Cook County, Illinois, and ordered that the divorce decree "shall be enrolled and established as a decree of the Circuit Court of Cook County."

On February 20, 1967, an order was entered in the Circuit Court of Cook County, which included a finding "that no monies or sums of money are due and owing to the Plaintiff by the Defendant under the provisions of the Decree of March 15, 1965." The order directed the defendant to pay to the plaintiff, "as and for alimony and support for herself, the sum of Forty Dollars ($40.00) per week, and as and for support and maintenance of the minor children of the parties hereto, the sum of Sixty Dollars ($60.00) per week." The order also directed "that the parties shall pay their own respective attorneys' fees and court costs, the Plaintiff having waived her right to contribution from the Defendant for attorneys' fees, court costs and expenses incurred in the prosecution of this cause."

On appeal, defendant contends that (1) the trial court refused him an opportunity to present evidence on his own behalf and did not allow him to cross-examine the plaintiff after her direct examination; (2) the trial court's

modification of the divorce decree was improper and an abuse of discretion; (3) the trial court's denial of the affirmative relief prayed for in the defendant's answers was contrary to the manifest weight of the evidence; and (4) the Circuit Court of Cook County had no jurisdiction to modify the alimony and child support awards of a divorce decree entered by the Circuit Court of Lake County.

 Considered first is the question of the jurisdiction of the Circuit Court of Cook County to enroll the Lake County decree and to enforce or modify its provisions. There appears to be no direct statutory authority for such an enrollment. The customary practice is outlined in Jackson v. Jackson, 55 Ill App2d 77, 204 NE2d 153 (1965), where the plaintiff sought to register a Winnebago County divorce decree in Cook County under the provisions of the Uniform Enforcement of Foreign Judgments Act. There, the court said (p 82):

> "The Uniform Act, if correctly followed and used for the purpose for which it was designed, gives the court jurisdiction of out-of-state judgments only. It cannot be used to secure jurisdiction over judgments, decrees or orders entered by another court within the same state. It follows, therefore, that the decree in the instant case could not be registered under the Uniform Act since it was not the proper subject matter of that Act."

In the Jackson case, the court further stated (p 83):

> "[T]here has always been available in Illinois proper procedure for the enforcement of both local and foreign judgments. Ill Rev Stats 1963, c 110, § 101.-13(2); Nichols, Illinois Civil Practice, § 4808. The Divorce Act authorizes the enforcement of divorce decrees in any manner consistent with the rules and practice of the court. Ill Rev Stats 1963, c 40, § 19.

361

The accepted practice of enforcing a divorce decree entered in another county within Illinois, is to file a complaint, together with a copy of the decree, praying that the decree be established in the county where the enforcement is sought."

The record here shows that plaintiff followed the procedure outlined in Jackson v. Jackson by filing in the Circuit Court of Cook County a complaint to enroll and establish the Lake County divorce decree, and a copy of the decree was made a part of the complaint. The defendant was served with a summons in Cook County by the Sheriff of Cook County and subsequently entered his appearance. As both parties now reside in Cook County, the enrollment of the divorce decree in Cook County, with proper notice to the defendant, made available a practical procedure for both parties for the effective enforcement of the provisions of the Lake County divorce decree. In no way does it lessen the protection given defendant to present any defense that may be interposed in post-divorce decree proceedings. Therefore, we hold that the Circuit Court of Cook County properly enrolled and established the instant divorce decree in the Circuit Court of Cook County and properly assumed jurisdiction of the subject matter and the parties thereto.

Considered next is defendant's contention that he was "denied his constitutional right to due process when, at the hearing, the trial court refused him an opportunity to present evidence on his own behalf and did not allow him to cross-examine the plaintiff after her direct examination." The hearing on plaintiff's petition to show cause and to modify the divorce decree by increasing support payments commenced on January 6, 1967. Defendant was called under section 60 and examined at length as to his income and financial status. The hearing was adjourned to January 12, 1967, and defendant continued his testimony as to his financial status. On this occasion,

defendant was cross-examined by his own counsel, at the end of which his attorney said, "No further questions." Plaintiff then testified as to her financial status, living quarters and about the children—Michael, eleven years of age, Douglas, nine years, and Robert, four years. At the conclusion of plaintiff's direct testimony, the record shows that "the Court and Counsel retired to the Court's Chambers, and a discussion was had out of the presence and hearing of the Court Reporter." No further testimony appears of record.

From our examination of this record, we find no indication that the trial court refused to permit defendant to present evidence on his own behalf or refused to permit defendant to cross-examine the plaintiff after her direct testimony. In fact, the record reflects a courteous and continued colloquy between court and counsel in an effort by the court to receive and examine any evidence pertinent to the issues. We find defendant was given a fair trial on the issues before the court.

Considered next is the modification of the alimony and child support provisions of the decree. Plaintiff's petition to modify the decree asserted defendant's earnings had substantially increased, and plaintiff sought a "consonant" increase in the alimony and child support. During the taking of the testimony as to defendant's earnings, and after the trial court indicated there was no basis for increasing the alimony and child support, counsel for plaintiff requested the court to make "some division as to the amount of alimony and the amount of child support." The court replied, "I think that ought to be done. According to the terms of the decree—." The requested division was made in the order of February 20, 1967, as previously outlined.

Defendant argues that "under the original Decree and the applicable case law as above, the alimony and child support should be reduced to at least $84.89 per week to

reflect just the decrease in Plaintiff's rent. Such relief was specifically requested by Defendant in his Answers. Yet, contrary to even its own comments quoted above, the Trial Court increased the alimony and child support $65.00 per month by directing payment of a total of $100.00 per week. . . . Defendant's income tax expense will be increased by approximately $450.00 with a commensurate decrease in Plaintiff's."

We are not persuaded that the action of the trial court in making the division of the $100 awarded in the original decree into $40 per week alimony and $60 per week child support was an overall increase of $65 per month. The testimony that the plaintiff moved from the $215 apartment into cheaper quarters was before the court when the trial court arrived at its decision to divide the weekly $100 payment into $40 alimony and $60 child support. Defendant is now required to pay $100 per week, the same as before. If there was an issue as to income tax questions incidental to the division of the $100 into alimony and child support, the record does not reflect any discussion or evidence on that point.

■ ■ Considering the circumstances portrayed here, the ages of the children and the extended hearing by the court, we find nothing improper in the division of the $100 into alimony and child support, nor do we find justification for this court to direct a reduction of the overall amount of the alimony and child support. If there are any income tax questions which are adverse to defendant, we note that the order of February 20, 1967, includes the following:

"(f) That the rights of the parties to seek modification or change of any and all provisions in the Decree for Divorce herein shall in no way be changed, altered, diminished, waived or barred by the provisions of this Order, and that either party shall be

free to seek such relief from this Court at any time in the manner provided by law."

For the reasons stated, the enrollment decree and the subsequent order of February 20, 1967, are affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.