(No. 48589.-

ROBERT WILLIAM SOMMER, Petitioner, v. GEORGE BOROVIC, JR., Judge, *et al.,* Respondents.

*Opinion filed October 5, 1977.—Supplemental opinion filed on denial of rehearing January 10, 1978.*

Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan, and Popejoy, Nelson, Lucas & Speer, of Wheaton (James W. Jerz, of counsel), for petitioner.

Marvin Juron, of Juron & Rubin, of Chicago, for respondent Helene Sommer Lowenthal.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

This is an original action brought by Dr. Robert Sommer for the issuance of a writ of *mandamus* (58 Ill. 2d R. 381) to expunge certain orders entered in the circuit

court of Du Page County enjoining the petitioner from engaging in further proceedings in the circuit court of Lake County regarding the modification of the child-custody provision of a divorce decree entered in the Du Page court.

Dr. Robert and Helene Nadine Sommer were the parents of four minor daughters at the time the circuit court of Du Page County entered their decree of divorce on March 20, 1967. The custody of the daughters was awarded to Mrs. Sommer. Subsequently, Dr. Sommer moved to Lake County and Mrs. Sommer, who had married John Lowenthal, moved to New Jersey with her new husband and the four daughters.

In 1974 the employment of Mr. and Mrs. Lowenthal required them to go to South Africa, and Mrs. Lowenthal and Dr. Sommer agreed that he might have custody of the youngest daughter, Rachel, during Mrs. Lowenthal's stay in South Africa. (Rachel is the only daughter now concerned in this dispute. The other daughters have reached the age of majority.) Upon Mrs. Lowenthal's return to the United States she asked Dr. Sommer for the return of Rachel, but he refused.

On January 29, 1975, Dr. Sommer petitioned the circuit court of Lake County for an order transferring the custody of the children to him. He filed a complaint asking that the Du Page County divorce decree be registered as a "foreign judgment," attaching a copy of the decree to the complaint. He served notice on Mrs. Lowenthal of the filing of the proceeding, and she filed an answer stating that custody should remain with her. She also filed a counterclaim for back child-support payments and for an increase in future child-support payments. After a hearing the circuit court of Lake County ordered that custody of the children be awarded to Dr. Sommer.

Mrs. Lowenthal then removed Rachel from Illinois to New Jersey, and she was declared to be in contempt of court by the Lake County court. She instituted an action

in the New Jersey courts asserting a right to Rachel's custody. Dr. Sommer appeared in New Jersey and sought to enforce the Lake County order giving custody of Rachel to him and to dismiss the New Jersey proceedings. When the New Jersey court refused to dismiss its proceedings, Dr. Sommer removed Rachel from New Jersey and returned her on March 3, 1976, to Lake County. It was said in oral argument that Dr. Sommer had, without the mother's knowledge, picked up Rachel on her way from school. On March 11, 1976, Mrs. Lowenthal filed an "emergency petition for change of child custody" in the Lake County court, and on May 3, 1976, she moved to vacate the order giving custody to Dr. Sommer and challenged that court's jurisdiction to have entered the order. She alleged that any proceeding to modify the original divorce decree should have been brought in the circuit court of Du Page County.

The Lake County court denied the motion to vacate on June 9, 1976. In the meantime, Mrs. Lowenthal had filed a petition for a rule on Dr. Sommer to show cause why he should not be declared in contempt of court in the circuit court of Du Page County. On April 30, 1976, that court entered an order enjoining him from removing Rachel from Illinois, and on May 11 the court entered an order placing Mrs. Lowenthal "under protective order" of the court, and declaring the contempt order of the Lake County court to be void. The Du Page County circuit court also enjoined the sheriffs of Lake and Du Page counties from attempting to enforce the contempt order of the Lake County court against Mrs. Lowenthal. On June 15, Dr. Sommer moved to dismiss the petition for rule to show cause, alleging the Lake County order of June 9 denying Mrs. Lowenthal's motion to dismiss had made the question of jurisdiction *res judicata.* His motion was denied, and the Du Page court enjoined him from further proceedings in Lake County. Dr. Sommer then filed a

motion for leave to file a petition for a writ of *mandamus* in this court, which we allowed.

The circuit court of Lake County was without authority to exercise jurisdiction over the subject of the custody of the children involved here. The general rule is stated in the annotation at 146 A.L.R. 1153 (1943). There it is said that the rule supported by the greater weight of authority is that jurisdiction acquired by a court in a divorce proceeding over the custody and maintenance of children of parties to the suit is not only continuing but is also exclusive and precludes any other court in the State where the custody proceedings were held from later acquiring or exercising jurisdiction over the same subject. All proceedings relating to the maintenance and custody of such children of the divorced parents must thereafter be brought in the same court in which the original decree on that question was rendered. 146 A.L.R. 1153 (1943) and cases cited therein.

Nelson on Divorce and Annulment states the rule:

> "While there is some authority to the contrary, a general rule obtains in the majority of states that where a court grants a divorce and awards the custody of a minor child of the parties, the court retains jurisdiction to determine questions of custody of the child until it attains majority, to the exclusion of all other courts of the same state ***." 2 Nelson on Divorce and Annulment sec. 15.55 (2d ed. 1961).

The rule is understandable, for an order awarding custody of a child is, by its nature, an interlocutory order and not a final one. *Kusick v. Kusick* (1943), 243 Wis. 135, 9 N.W.2d 607, illustrates the general rule. There a wife brought a divorce proceeding in Marquette County. The court dismissed the divorce action but awarded custody of the children to the wife and ordered the husband to make monthly payments for the support of the children. The wife later commenced an action of divorce in Dane County. The Supreme Court of Wisconsin held that

the court in Dane County had no jurisdiction to increase the allowance for the support of the children, as " '[a]pplication to change or vacate a judgment should be made in the action in which it was entered and to the court that rendered it.' [Citation.] " (243 Wis. 135, 138, 9 N.W.2d 607, 608.) The court stated:

"A stipulation of the parties could not confer jurisdiction on the circuit court for Dane county, where power to act is involved. [Citation.] The circuit court for Dane county could not properly assume jurisdiction of the custody and support of the minor children in this action. The effect of the amended judgment herein, if upheld by this court, would nullify the Marquette county judgment providing for the support of these minor children, and interfere with the exclusive power of that court to enforce its judgment and modify it as the condition of the parties or the needs of the children might require. Such interference by one circuit court with the judgment and exercise of power by another circuit court cannot be approved.

'On principle a court of concurrent jurisdiction should not take jurisdiction of a matter which is properly involved in a proceeding then pending in another court which is competent to render adequate relief in the premises.' [Citation.] " 243 Wis. 135, 138, 9 N.W.2d 607, 608-09.

Our divorce act provides in part: "The court may, on application, from time to time, terminate or make such alterations in the *** care, education, custody and support of the children, as shall appear reasonable and proper." (Ill. Rev. Stat. 1975, ch. 40, par. 19.) The decretal court retains jurisdiction of a divorce proceeding at all times to enforce, adjust or modify the original decree in regard to

the custody and care of children as changing circumstances may warrant. (*Nye v. Nye,* 411 Ill. 408, 416; *Kelley v. Kelley,* 317 Ill. 104, 110; *Crawley v. Bauchens,* 13 Ill. App. 3d 791, 795; *Eggemeyer v. Eggemeyer,* 86 Ill. App. 2d 224, 232-33.) In *Kelly,* this court stated:

> "Since the children of divorced parents are often exposed to the mutual animosities and jealousies of their parents and the happiness of the children and their usefulness as citizens are thereby endangered, it is the established policy of the law of this State to regard such children as wards of the court. The nurture and proper training of the children of divorced parents being matters of vital interest to the State as well as to the children themselves, the legislature has provided that the court granting a divorce shall have full and continuing jurisdiction, during the minority of such children, to make from time to time such orders with respect to their care, custody and support as reason and justice shall require." 317 Ill. 104, 110.

In *Eggemeyer v. Eggemeyer,* 86 Ill. App. 2d 224, 232-33, it was also noted that the jurisdiction of the decretal court was exclusive. The United States Court of Appeals for the District of Columbia in *Emrich v. McNeil* (D.C. 1942), 75 App. D.C. 307, 310, 126 F.2d 841, 844, 146 A.L.R. 1146, 1149-50, in stating the general rule also described the control of the decretal court over the child's custody:

> "But the important consideration which requires that the equity court—a court of competent jurisdiction—shall retain continuing and exclusive jurisdiction in the present case is one of public policy, i.e., the welfare of the minor child. Under such circumstances it is generally recognized that, independent of statute, a court of

chancery has jurisdiction over the custody and maintenance of such a child. *** After submitting themselves to the jurisdiction of the court, the parents cannot by their agreement deprive it of power to control the custody and maintenance of the child. Such a child is in a very real sense the ward of the court. It has power to change the custody of the child; to enforce the parental obligation to provide maintenance; and, if necessary, to remove the child from the custody of both parents."

Considering this continuing jurisdiction of the decretal court over the custody of the children in a divorce proceeding, it is obvious that the orderly administration of justice should require that any application to modify the child-custody provisions of a divorce decree be made to the court which entered it. Concern for the orderly administration of justice was expressed by this court in *People ex rel. Lehman v. Lehman,* 34 Ill. 2d 286. There a husband and wife were divorced in South Carolina and custody of the minor daughter was awarded to the mother. The South Carolina court later transferred custody to the father. The mother, while exercising visitation rights, removed the daughter from South Carolina to Du Page County in Illinois and enrolled the daughter in school. The mother filed an application in the circuit court of Cook County seeking transfer of custody to her. Her complaint alleged that she and the child were residents of Cook County and that the requested change in custody was justified by circumstances that had arisen after the second custody order of the South Carolina court. The father subsequently brought a *habeas corpus* action in the circuit court of Du Page County seeking return of the child. The Du Page court denied the mother's motion to dismiss the *habeas corpus* proceeding on the ground that the mother's fraudulent allegations of residence in Cook County de-

prived that court of jurisdiction.

On appeal this court held that the doctrine of prior jurisdiction required the circuit court of Du Page County to dismiss the father's *habeas corpus* petition. Despite the claim of the mother's fraudulent representations of residence, and although it was assumed by this court that the Du Page County court was the first to acquire personal jurisdiction over the parties, this court declared that the dismissal of the Du Page County proceeding was required. It was said: "The orderly administration of justice does not permit one court of this state to ignore an action pending in another court of this state." 34 Ill. 2d 286, 292. See also *People ex rel. Phillips Petroleum Co. v. Gitchoff*, 65 Ill. 2d 249; *People ex rel. East Side Levee and Sanitary District v. Madison County Levee and Sanitary District*, 54 Ill. 2d 442; *Leonard v. Bye*, 361 Ill. 185.

Because the circuit court of Du Page County had continuing and exclusive jurisdiction over the question of custody, Dr. Sommers' filing of a complaint in the circuit court of Lake County to register the Du Page court's decree was inappropriate and obviously could not operate to confer jurisdiction upon the circuit court of Lake County. *Jackson v. Jackson*, 55 Ill. App. 2d 77, upon which the father relies to support his attempted registration, is simply not in point. There an action was brought in Cook County seeking past-due alimony and support payments that had been ordered by the circuit court of Winnebago County in a divorce proceeding. The appellate court, *inter alia*, held that the plaintiff could not register the Winnebago County decree in Cook County under the provisions of the Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1975, ch. 77, par. 88 *et seq.*) as it was not a foreign judgment. (Dr. Sommer here erroneously attempted to register the Du Page County decree as a "foreign judgment.") In so holding the court said: "The accepted practice of enforcing a divorce decree entered in

another county within Illinois, is to file a complaint, together with a copy of the decree, praying that the decree be established in the county where the enforcement is sought." (55 Ill. App. 2d 77, 83.) The procedure described in *Jackson* represents the general common law method of bringing an action of debt to enforce civil judgments which are final in their terms. (4A C. Nichols, Illinois Civil Practice secs. 4803-16 (1960 rev. ed.) 2 A. Freeman, Judgments secs. 1086, 1104 (5th ed. 1925).) However, in the type of civil proceeding contemplated by this procedure the judgment or the decree involved had to be a final one; there would be no continuing jurisdiction in the court rendering it. (*Dow v. Blake,* 148 Ill. 76, 85; *Fiore v. City of Highland Park,* 93 Ill. App. 2d 24, 31; 1 A. Freeman, Judgments sec. 353 (5th ed. 1925).) In *Jackson* the suit was for a sum certain representing past due alimony and support and a common law action of debt of course would be appropriate. However, as we have noted, a custody order by its nature is interlocutory and not final, and the decretal court retains jurisdiction. A common law action of debt upon a judgment will not lie upon a decree of divorce insofar as the decree is subject to modification. 2 A. Freeman, Judgments sec. 1067 (5th ed. 1925); see also *Dow v. Blake,* 148 Ill. 76, 86-87.

There is no merit in the contention of Dr. Sommer that Mrs. Lowenthal's appearance and participation in the proceeding in the circuit court of Lake County operated as a waiver, so as to deprive the circuit court of Du Page County of jurisdiction. There are holdings that the rule that gives exclusive jurisdiction to the court first acquiring it is one that may be waived (*Plume & Atwood Manufacturing Co. v. Caldwell,* 136 Ill. 163, 166; *Olofsson v. Wood,* 23 Ill. App. 2d 32, 39-40; *Paskewie v. East St. Louis & Suburban Ry. Co.,* 197 Ill. App. 1, 7), but none of these holdings involved proceedings to modify the child-custody provisions of a divorce decree. Granting the

decretal court continuing and exclusive jurisdiction to modify child-custody provisions of the divorce decree is not founded solely on the doctrine of prior jurisdiction. That jurisdiction is premised also on an eminently important public policy consideration—the welfare of the child. When a divorce is granted, a child of the parties to it becomes a ward of the court (*Kelly v. Kelly,* 317 Ill. 104, 110), and the court has the authority and the responsibility to act for the child's care, custody and support until it reaches majority. In discharging this responsibility the court's primary concern obviously is not the wishes of the parents but rather the best interests of the child. (*McDonald v. McDonald,* 13 Ill. App. 3d 87, 90.) It should be obvious that the actions of the parents cannot bind the court any more than an agreement between the parents could bind on the question of the court's continuing authority and jurisdiction to act for the best interests of the child. (See *Cohn v. Scott,* 231 Ill. 556, 559; *Walter v. Walter,* 61 Ill. App. 2d 476, 480; *Kusick v. Kusick* (1943), 243 Wis. 135, 9 N.W.2d 607; 2 Nelson, Divorce and Annulment sec. 15.21 (1961 rev. ed.).) The participation of Mrs. Lowenthal in the proceeding instituted by her former husband in the circuit court of Lake County did not serve to deprive the circuit court of Du Page County of jurisdiction and to vest jurisdiction in the circuit court of Lake County.

It is not inappropriate to observe that Dr. Sommer would appear to be in an embarrassing as well as legally untenable position in contending that his former wife lost through waiver her rights under the Du Page County court's decree. On the record before this court it must be said that he was the initial wrongdoer in that he wrongfully acted in disregard of the order of the Du Page County court by refusing to return custody of the child to Mrs. Lowenthal. There is no showing on the record of how he was able to then appear before the circuit court of Lake

County with clean hands. The record does not show the ground for his claim before that court that custody should be transferred to him.

For the reasons given, the petition for the writ of *mandamus* is denied. Under our supervisory authority (*People ex rel. Phillips Petroleum Co. v. Gitchoff*, 65 Ill. 2d 249, 257) it is ordered that the circuit court of Lake County vacate all orders entered in this matter and dismiss the pending proceedings.

*Writ denied; supervisory order entered.*

MR. JUSTICE CLARK, dissenting:

I believe the majority correctly states the general rule of a court's continuing and exclusive jurisdiction over child-custody disputes in divorce proceedings. In applying that rule, however, the majority ignores relevant data presented here, namely: (1) Mrs. Lowenthal's acquiescence to· the Lake County proceedings; (2) the greater degree of mobility in society today; and (3) Du Page County's assumption of appellate review of Lake County's orders.

Had Mrs. Lowenthal not acquiesced to the Lake County circuit court's jurisdiction and participated in those proceedings for over a year, the majority would be on firmer ground. The circuit court of Lake County had personal jurisdiction over the parties and general subject matter jurisdiction over the dispute. (See *People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, 291; *Cowles v. Cowles* (1846), 8 Ill. 435, 437-38.) In *Plume & Atwood Manufacturing Co. v. Caldwell* (1891), 136 Ill. 163, 166, this court held that the "rule giving exclusive jurisdiction to the court first acquiring it, is one that the parties may waive ***." In *State ex rel. Beineke v. Littell* (1966), 247 Ind. 686, 220 N.E.2d 521, the parents of a minor son were granted a divorce by the superior court of Marion County and the mother was awarded custody of the child. Two years later, the mother executed a written consent to have

a third party appointed the son's legal guardian (this consent also waived notice of the petition to appoint the guardian). The petition to appoint the legal guardian was allowed by the superior court of Morgan County. The mother remarried three years later and forcibly removed her son from Morgan County to Indianapolis. She then petitioned the Morgan County superior court to dissolve the guardianship. This was denied.

Subsequently the mother filed an original action in the Supreme Court of Indiana seeking a writ of prohibition restraining the Morgan County court from exercising jurisdiction. This was the first time she challenged the jurisdiction of the Morgan County court. In denying the writ, the court reasoned:

> "The solution to the problem here presented would be quite simple were it not for the consent and waiver given many years ago by the natural mother, relatrix in this case, and the acquiescence therein by her for many years. We have said many times that the court granting the divorce and fixing the custody of the children has continuing jurisdiction thereof." 247 Ind. 686, 690, 220 N.W.2d 521, 523.

The court continued:

> "However, a court may lose jurisdiction of the subject-matter to another court where the parties sleep on their rights or acquiesce or consent to the jurisdiction of another court which has jurisdiction of the subject-matter. The Superior Court of Morgan County has the same jurisdiction of the subject-matter of guardianships and the custody of children as that of the Marion Superior Court ***." 247 Ind. 686, 690, 220 N.E.2d 521, 523.

In this case, had Mrs. Lowenthal made a timely motion to dismiss the Lake County proceedings, based

upon the continuing jurisdiction of the Du Page County court, the Lake County circuit court would have been obliged to do so. However, she voluntarily appeared and litigated the child-custody question to judgment and subsequently petitioned the same court for yet another change of custody. It was only after these actions that she sought relief from the Du Page County circuit court and moved to dismiss the Lake County proceedings. Through her actions she consented to the jurisdiction of the Lake County circuit court and should not now be permitted to protest that jurisdiction.

The very mobility of people in contemporary society, as evidenced by Dr. Sommer and Mrs. Lowenthal, necessitates a more convenient process for settling disputes, such as here, and for enrolling and enforcing judgments outside the jurisdiction of a decretal court. The Uniform Enforcement of Foreign Judgments Act has facilitated the enforcement of out-of-State judgments. Yet intrastate judgments are not provided for in the statutes. It is incongruous for one party to be able to move out of the State and enforce a judgment in the new State—and county—of residence and for the other party, who remains in the State but moves to another county, to be unable to do so. As the Lake County circuit court pointed out, there is no sound public-policy reason for affording one who moves out of State greater convenience than one who remains. To take a not-so-extreme example, it would be easier for a party to return to the decretal court in Du Page County from Beloit, Wisconsin, than for the other party to return from Cairo, Illinois. Yet, the Beloit party could remain in Beloit while the Cairo party, under the majority decision, would have to return to Du Page County for modification of a decree.

The majority correctly points out that sister county decrees or intrastate judgments may not be registered elsewhere in the State under the Uniform Enforcement of

Foreign Judgments Act (Ill. Rev. Stat. 1975, ch. 77, par. 88 *et seq.*). (*Jackson v. Jackson* (1965), 55 Ill. App. 2d 77.) The majority then asserts that the common law method for enrollment and enforcement of sister county decrees is not in point. (See *Jackson* and *Fuhrer v. Fuhrer* (1968), 91 Ill. App. 2d 358.) The common law procedure for enrollment and enforcement, the majority says, is appropriate for final orders but not for a custody order which is, "by its nature, an interlocutory order and not a final one." I must disagree.

The Uniform Enforcement of Foreign Judgments Act allows for the registration of "any judgment, decree or order" (Ill. Rev. Stat. 1975, ch. 77, par. 88). In *Light v. Light* (1957), 12 Ill. 2d 502, 509, this court held that, in a proceeding for the registration of a decree under the Act, a custody decree is "entitled to full faith and credit until a different order as to custody is entered by a court of competent jurisdiction." (See *People ex rel. Halvey v. Halvey* (1946), 330 U.S. 610, 614, 91 L. Ed. 1133, 1136, 67 S. Ct. 903, 906.) I believe this is analogous to the registration of child-custody decrees by sister counties under the common law procedure.

By dismissing Mrs. Lowenthal's appearance and partic-ipation in the Lake County proceedings as meaningless and by ignoring the contemporary need for a convenient forum for disputing parties in a mobile society, the majority's decision is ultimately reduced to an approval of the assumption of appellate review by a sister county court. For these reasons, I would award the writ.

MORAN and DOOLEY, JJ., join in this dissent.

Supplemental Opinion on Denial of Rehearing.

In his petition for rehearing the petitioner notes that on October 1, 1977, four days prior to the date on which we announced our decision in the present case, the Illinois

Marriage and Dissolution of Marriage Act (Pub. Act 80–923) became effective. The petitioner contends that, as a result of sections 512(a) and (c) of the Act, the circuit court of Lake County had jurisdiction. We do not agree that the new law is applicable.

Section 801 of the new act is as follows:

> "(a) This Act applies to all proceedings commenced on or after its effective date.
>
> (b) This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. Evidence adduced after the effective date of this Act shall be in compliance with this Act.
>
> (c) This Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act.
>
> (d) In any action or proceeding in which an appeal was pending or a new trial was ordered prior to the effective date of this Act, the law in effect at the time of the order sustaining the appeal or the new trial governs the appeal, the new trial, and any subsequent trial or appeal."

Section 801(d) governs appeals which were pending prior to October 1. Such appeals are governed by the law which was in effect at the time of the order "sustaining the appeal." The latter phrase does not mean the judgment entered by the reviewing court upon the appeal, but rather the order of the trial court which forms the basis of the appeal. That this is the meaning of subsection (d) is clear from the fact that subsections (a), (b) and (c) each describe situations in which the new act *is* applicable. That this is the correct construction of subsection (d) is also evidenced by the Commissioners' Note to section 502(d) of the Uniform Marriage and Divorce Act (9 Uniform Laws Annotated 514-15 (1973)), from which section 801(d) has been drawn. That note provides:

> "Subsection (d) provides that this Act does not apply to appeals that had been perfected and thus were pending

at its effective date, to new trials ordered prior to its effective date, or to any subsequent appeals or new trials resulting from these pending appeals or new trials. The purpose of this provision is to allow the correction on appeal or in a new trial of errors made in applying the law in effect at the time of the original hearing pursuant to that law. Changing the rules on appeal or at the new trial seems unfair to the party prejudiced by the error. A similar provision was included in the California Family Law Act of 1969."

See also *Dockum v. Dockum* (1974), 34 Colo. App. 98, 101, 522 P.2d 744, 746, in which the court held that the provisions of Colorado's Uniform Dissolution of Marriage Act, which applies only to actions commenced on or after the effective date of the Act (Colo. Rev. Stat. sec. 14–10–133 (1974)), did not apply to a proceeding brought to modify a custody order which had been entered prior to that date. *Cf. Spurling v. Spurling* (1974), 34 Colo. App. 341, 343, 526 P.2d 671, 672.

While the present case involves a petition for an original writ of *mandamus,* rather than an appeal, we believe the same principle should be applicable. Such an interpretation is consistent with subsection (b), for the Commissioners' Note to section 502(b) makes it clear that the reference there made to "pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered" refers to proceedings pending at the trial court level, not those pending in a court of review. See 9 Uniform Laws Annotated 514.

CLARK and MORAN, JJ., dissenting.