JAMES BRYAN FREEMAN, JR., *et al.*, Petitioners-Appellees, *v.* LEIGH ANN SETTLE *et al.*, Defendants.—(RUSSELL LEE SETTLE, Defendant-Appellant.)

Fifth District   No. 78-402

Opinion filed August 31, 1979.

G. MORAN, J., dissenting.

Otto E. Funk, of Hillsboro, for appellant.

Meyer & Meyer, of Greenville, for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

This is an appeal from an order of adoption entered by the Circuit Court of Montgomery County after it found (1) that the appellant, Russell Settle, is an unfit parent within the meaning of the Illinois Adoption Act, and (2) that the adoption of the appellant's daughter, Leigh Ann, by the appellees, her maternal grandparents, is for the best interests and welfare of the child. The appellant contends that the finding of parental unfitness is not justified by the evidence, and that the trial court erred in hearing evidence on the issue of whether the adoption would be for the child's best interests prior to making a finding of parental unfitness. It is our opinion that these contentions are without merit, and accordingly, the decisions of the trial court must be affirmed.

Leigh Ann, who is now 10 years old, is the biological child of the appellant and his former wife, Jana Ann Barry. The natural parents were divorced in 1970, and custody of Leigh Ann was granted to her mother pursuant to the divorce decree. Although the appellant retained the right of reasonable visitation, he failed to visit Leigh Ann for a period of nearly six years. During these years, the appellant's only efforts to maintain contact with Leigh Ann consisted of mailing a few cards and presents to the child, most of which were returned unopened. However, even these minimal efforts ceased two years prior to the institution of this proceeding

because, according to appellant, he believed such efforts were futile. He also testified that he was threatened by appellees, with whom Leigh Ann had lived for several years, not to attempt to visit the child.

In the latter part of 1970, shortly after the appellant and Leigh Ann's mother were divorced, he approached the maternal grandparents with an offer to execute a consent to their adoption of Leigh Ann, apparently in an effort to persuade them to forego enforcement of appellant's obligation, pursuant to the divorce decree, to provide support for Leigh Ann. Shortly thereafter, on October 7, 1970, the appellant executed the consent before Judge Kinney in the Circuit Court of Madison County. Since the execution of the consent, the appellant has failed to contribute anything to Leigh Ann's support.

Leigh Ann's mother, who subsequently married and divorced Michael Barry, was killed in an automobile accident in September of 1976. Immediately thereafter, the appellees instituted this proceeding to adopt the child. The petition alleged the appellant's consent to Leigh Ann's adoption, and was later amended to allege, in the alternative, that no consent was necessary due to the appellant's unfitness as a parent. Specifically, the amended petition alleged abandonment, desertion, or the failure of the appellant to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare as separate grounds for a finding of unfitness. The trial court ruled that although the consent was given freely and voluntarily, it was inoperative due to the lapse of time between its execution and its attempted enforcement. The appellees have not appealed this ruling. The trial court also ruled that no consent was required because the evidence showed that the appellant is an unfit person as alleged in the amended petition.

■■ This court is aware that clear and convincing evidence is the quantum of proof required to support a finding of parental unfitness. (*In re Gates* (1978), 57 Ill. App. 3d 844, 373 N.E.2d 568.) However, because of the superior opportunity of the trial court to hear and observe the witnesses, its decision on this issue should not be disturbed unless it is palpably contrary to the manifest weight of the evidence. *Gates*; *In re Ice* (1976), 35 Ill. App. 3d 783, 342 N.E.2d 460.

■■ It is unnecessary for this court to determine the sufficiency of the evidence of abandonment or desertion for the reason we are of the opinion that there is ample support in the record for the finding that the appellant failed to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare and is therefore an unfit person within the terms of section 1D(b) of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501D(b)). First, the appellant's effort to escape his obligation of support to Leigh Ann by executing a consent to adoption evidences a total disregard for his rights and responsibilities as a parent. Although the

appellant argues that he was unaware of the import of the consent, the testimony of Judge Kinney indicated that the appellant was made aware of the consequences and acknowledged them in open court before executing the consent. Second, the appellant's failure to inquire at Leigh Ann's school concerning her progress demonstrates a lack of concern for the child's welfare. Finally, and most importantly, the appellant's prolonged lack of contact with Leigh Ann, despite being in close proximity to her home, indicates little, if any, interest in the child. Although the appellant argues that this lack of contact was due to discouragement by the appellees and the fact that the appellant was not the legal custodian, these excuses do not justify the appellant's conduct. The appellant's efforts to maintain contact were minimal at best, and he failed to take any steps whatsoever to enforce the visitation rights granted him in the divorce decree. Under these circumstances, the trial court's finding that the appellant is unfit cannot be disturbed.

The appellant's final argument is that the trial court erred in hearing evidence on the issue of whether adoption would be for the best interest and welfare of Leigh Ann prior to making a determination concerning the appellant's fitness. This contention is without merit.

■■ In the absence of valid parental consent, a finding of parental unfitness and a determination that adoption is for the welfare of the child are required before the court may enter an order of adoption. (Ill. Rev. Stat. 1977, ch. 40, par. 1517.) The appellant relies on *In re Buttram* (1978), 56 Ill. App. 3d 950, 372 N.E.2d 1135, and *In re Hrusosky* (1976), 39 Ill. App. 3d 954, 351 N.E.2d 386, to support his argument. Each of these cases held that absent parental consent, a finding of parental unfitness is a prerequisite to termination of parental rights and must be determined before the court can consider what placement if any will suit the best interest of a child; however, neither held that separate hearings should be held.

Section 14 of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1517) provides:

> "* * * After *the hearing* on such application [for adoption], * * * the court may enter an order of adoption, provided the court is satisfied * * * from the evidence, if any, introduced, that the adoption is for the welfare of the child and that there is a valid consent, or that no consent is required as provided in Section 8 of this Act. * * *" (Emphasis added.)

Section 8 of the act (Ill. Rev. Stat. 1977, ch. 40, par. 1510) provides that consents shall be required in all cases unless a person whose consent would otherwise be required shall be found by the court to be an unfit person as defined in the act. The language of section 14 clearly refutes appellant's argument.

This court held in *In re Burton* (1976), 43 Ill. App. 3d 294, 356 N.E.2d 1279, on the appeal of the mother of the children sought to be adopted, that the accumulation of errors required a new trial. The court there stated that, "in any event, the court's erroneous rulings in petitioners' favor on the admission and exclusion of evidence denied Mrs. Badger [mother of the child sought to be adopted] a fair trial." This, the court reasoned, was a result of the trial court's failure to hold a bifurcated hearing, as required by section 13 of the act, to first determine the fitness of the mother and then, subsequently, to consider the best interest of the children.

We note, however, that the petitioners in *Burton* were not related to the children sought to be adopted; therefore, section 13 of the act (Ill. Rev. Stat. 1977, ch. 40, par. 1516) was applicable to the proceedings. Section 13 provides that as soon as practicable after the filing of a petition for adoption the court shall hold a hearing, in other than an adoption of a related child, to determine the validity of the consent and to determine whether there is available suitable temporary custodial care for the child sought to be adopted. The determination of the validity of any consent expressly is required prior to the petitioners' application to the court for an order of adoption only in the case of a petition to adopt an unrelated child.

The petitioners in the instant case are the maternal grandparents of the child sought to be adopted; therefore, such child is a related child as defined in section 1B of the act (Ill. Rev. Stat. 1977, ch. 40, par. 1501B). Section 14 of the act (Ill. Rev. Stat. 1977, ch. 1517) provides that an order for adoption of a related child may be entered at any time after service of process and after the return date designated therein. The act does not contemplate the entry of an interim order on petitions for the adoption of a related child, and the petition may be called for hearing at any time after service of process and after the return date designated therein. A single hearing is provided for in such cases in which the court must determine that the adoption is for the welfare of the child and that there is a valid consent or that no consent is required because of unfitness of a parent.

An analogous provision appears in section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—9), which the *Hrusosky* court quoted in reaching its decision and which this court considered in *In re Gates* (1978), 57 Ill. App. 3d 844, 851, 373 N.E.2d 568, 574. In *Gates*, the court in considering the provisions of the Juvenile Court Act providing for separate adjudicatory and dispositional hearings in all cases, held, "that although the Juvenile Court Act clearly provides for separate hearings * * *, the power of the court to conduct simultaneous hearings has been implicitly recognized in decisions analyzing the admissibility of

evidence in such hybrid proceedings. See *People ex rel. Jones v. Jones* (5th Dist. 1976), 39 Ill. App. 3d 821, 350 N.E.2d 826; *People v. Brady* (4th Dist. 1972), 7 Ill. App. 3d 404, 287 N.E.2d 537."

■ In the instant case the trial court entered what was termed, "Findings and Decision" in which it found from the evidence that the appellant was, "an unfit person within the purview of the Adoption Act." The court then continued, "The court, having found the respondent, Russell Lee Settle, to be an unfit person by clear and convincing evidence and within requirements of the Adoption Act, it becomes necessary to determine what would be in the best interest of the child, Leigh Ann Settle. In re Hrusosky 39 Ill. App. 3d 954."

The Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501 *et seq.*) contains no requirement that separate hearings be held in instances where the petition is for the adoption of a related child. Instead, section 14 of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1517), quoted above, contemplates a single hearing. Therefore, the trial court is required to find that a parent is unfit, absent his consent, before considering the welfare of the child. Nevertheless, these determinations may be made at a single hearing.

In the instant case, the record indicates that the court recognized its responsibility to determine whether or not the appellant was an unfit parent before considering what placement would suit the best interest and welfare of the child as required in *Buttram* and *Hrusosky*. Since both determinations may be made at the same hearing, the procedure followed by the trial court was proper.

Accordingly, the order of the trial court granting the petition for the adoption of the appellant's daughter is affirmed.

Affirmed.

KUNCE, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
I dissent.
On September 13, 1968, appellant Russell Lee Settle was married to Jana Freeman, the daughter of appellees. Leigh Ann Settle was born of this marriage on April 14, 1969. The couple was divorced on August 31, 1969, via a decree entered by the circuit court of Madison County which granted custody of Leigh Ann to the mother with reasonable visitation rights to appellant. Russell Settle remarried in May of 1971. Jana Freeman was remarried to Michael Barry, but they were divorced approximately 2½ years later. Jana Freeman was killed in an automobile accident on September 12, 1976. On September 13 or 14, appellant sent a letter to

appellees, who had Leigh Ann at the time, demanding that he be given immediate custody of the child. On September 20, 1976, appellees filed their petition for adoption. Therefore, at the time of the filing of this petition the appellees did not have legal custody of Leigh Ann.

No action by a court can alter human relationships more completely and finally than an adoption which almost totally abolishes a natural parents' legal duties to and rights concerning his child. Also the child becomes in the eyes of the law a stranger to its own flesh and blood, permanently shedding all obligations of the parent-child relationship. It has been said:

> "The welfare of the child is a much more appropriate yard stick in a custody case than in an adoption matter. Adoption, which affects the course of inheritance, deprives the child of a place in which it was placed by nature, and by force of law thrusts the child into another relationship, while severing forever and conclusively the legal rights and interests of the natural parents, and is a very different matter from a change of custody, which could be on a temporary basis." *Jackson v. Russell* (1951), 342 Ill. App. 637, 639.

This case is a prime example of the devastating effect an adoption has on human relationships by court decree. Leigh Ann Settle has not only been made a legal stranger to her father, Russell Lee Settle, but also has been made a legal stranger to her two half-brothers and her paternal grandparents. Such drastic legal action should never be taken unless the circumstances are most compelling. I find no compelling reasons here.

The trial court considered this case to be the same as a custody case and in so doing it erred. There are fundamental differences between adoption cases and custody hearings. First, an order awarding custody is modifiable given a change in curcumstances, but a finding of unfitness of a parent which terminates the parent-child relationship is irrevocable. Then, too, a parent's unfitness under the Adoption Act must be proved by clear and convincing evidence in a separate hearing before evidence on the best interest and welfare of the child is heard. This is so because it is not the court's function in a contested adoption proceeding to balance the parent's merits against the petitioners' and after weighing the different factors decide who serves those interests better. Unless the hearing on the fitness of the parent is separated from the hearing on what is for the best interest of the child, there is great danger that trial court may be tempted to find that it is in the best interest of the child to find the parent unfit.

This court speaking through Justice Karns held in *In re Adoption of Burton* (1976), 43 Ill. App. 3d 294, 356 N.E.2d 1279, that the Adoption Act mandates a bifurcated process.

> "Where the parent does not consent, as here, he or she must be determined unfit within the statutory definition. [Citation.] Only

after proof of the existence of one of the statutory conditions precedent to adoption—either consent or unfitness—can the court properly consider the best interests of the child." (43 Ill. App. 3d 294, 301.)

If that was not clear enough, this court spelled out the process in even greater detail where we said:

"As we read the Adoption Act, it contemplates a two-step process: first, the filing of a petition, followed as soon as possible by a *hearing*, and then, if consent or unfitness is found, the entry of an *interim order*; second, ordinarily after a six-month waiting period, the final decree of adoption. [Citation.] On remand, therefore, the court should confine its *initial hearing* to the issue of whether Mrs. Badger's parental rights should be terminated, and should exclude evidence as to the home life of the Neals [the petitioners for adoption]. If clear and convincing evidence of unfitness on one or more of the grounds specified in the Adoption Act [citation] is not forthcoming, the petition should be denied. Only if unfitness is proved should the court proceed with its *consideration of evidence* relevant to the question whether adoption by the Neals is in the best interests of Sandra Fay and Martha Jean Burton [the children]." (Emphasis added.) 43 Ill. App. 3d 294, 302.

In a contested adoption the court should not balance the parents' merits against the petitioners' and after weighing the many factors relevant to the child's best interests, decide who serves those interests better, unless it first decides that the objecting parent is unfit. Justice Barry of the Third District observed, "By someone's standards, it is always possible to find a better home for a child than the one Providence has bestowed." *In re Hrusosky* (1976), 39 Ill. App. 3d 954, 960.

The majority distinguishes *Burton* on the ground that the petitioners in *Burton* were not related to the children sought to be adopted. The majority holds that section 13 of the statute (Ill. Rev. Stat. 1977, ch. 40, par. 1516) is not applicable to this case because the petitioners are the maternal grandparents of the child sought to be adopted. Since this is true, the majority reasons that section 14 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 1517) applies and that pursuant to section 14, an order for adoption of a related child may be entered at any time after the service of process and that interim order is necessary.

The interpretation the majority gives the foregoing statute is wrong. Sections 13 and 14 of the Act must be read together to make any sense. Section 13 provides for an interim order in adoption proceedings, while section 14 provides for an order to be entered only after the interim order

has been entered. Section 13, which provides for interim orders, in pertinent part reads as follows:

"§13. Interim order.) As soon as practicable after the filing of a petition for adoption the court shall hold a hearing for the following purposes:

A. In other than an adoption of a related child or an adoption through an agency, or of an adult:

\* \* \*

B. In all cases:

\* \* \* ."

(Ill. Rev. Stat. 1977, ch. 40, par. 1516.)

The language "in all cases" is plain. It mandates an interim order in all cases and also mandates a hearing in all cases prior to the entry of the interim order. Section 14 of the Adoption Act provides for an order only after the interim order mandated by section 13 is entered.

The court has no discretion to decree an adoption until after the statutory requirements are met, but after they are met, the court may exercise its discretion to allow the adoption, taking into consideration the moral, intellectual and material welfare of the child. Under section 13 of the Act the court could not assert jurisdiction in this case unless it first found the father unfit for one or more of the statutory reasons. After making this determination, the trial court could then proceed under section 14.

In the proceedings in the trial court the court did not recognize the difference in legal issues in adoption cases as distinguished from cases involving custody only. Custody is one thing; adoption is another. The trial court erred in not recognizing the difference. This court now approves that error. In approving this error, this court supplies arguments not made by appellees. The error the trial court committed in not holding a bifurcated hearing in the trial of this case was adequately argued by appellant in his brief. However, this argument was never answered by appellees. Thus, the majority in effect acts as counsel for one of the parties in this case.

The majority leaves the impression that Leigh Ann resided with appellees for several years prior to the death of her mother. This is not so. At the time of Jana's death, the child was living with her mother and had been so living for at least three years. According to the divorce decree entered on August 31, 1970, it was Jana Freeman, the mother of Leigh Ann, who was granted the legal custody of Leigh Ann. On the day of her death Jana Freeman still had actual custody and legal custody of Leigh Ann. Shortly after Jana's death, appellant asked for custody of his child. He was answered with the petition for adoption filed in Montgomery County. It should be noted that the right to custody of this child as

distinguished from adoption could have been litigated where the divorce was granted.

I do not believe that the evidence in this case clearly and convincingly proves that Russell Lee Settle was an unfit father and I do not believe that it was in the best interest of Leigh Ann to grant this adoption. The record in this case is replete with evidence of the hatred and animosity the petitioner, Janice Lee Freeman, exhibited toward Russell Lee Settle and his family. It is also undisputed that from the time of the divorce she attempted on many occasions to get her own daughter to consent to the adoption of Leigh Ann, which the daughter refused to do.

My position in this case is supported by the guardian ad litem who was appointed by the court to represent the interest of Leigh Ann in this adoption proceeding. With reference to the fitness of Russell Lee Settle as affected by the actions of Janice Lee Freeman, the guardian ad litem had this to say:

"She [Janice Lee Settle] admits to throwing a package in Settle's front yard that was sent to Lee Ann Settle by a member of Settle's family, and there is evidence that other cards sent to Leigh Ann by Settle's family were returned unopened. In addition, the Freemans have denied Settle's request to visit with Leigh Ann since the commencement of this proceeding. It is entirely possible that her attitude has been in large part responsible for Settle's failure to show an active interest in his daughter."

And with reference to the best interest of Leigh Ann, the guardian had this to say:

"Yet the inherent right which all parents have to the society of their children should not be abrogated without compelling reasons. Petition of Lehmann, 37 Ill. App. 3d 217, 342 N.E.2d 742. Similar protection should be given the child's right to the society of her father. Although I say this with a great deal of reservation, there is enough doubt in my mind as to the circumstances surrounding the signing of the consent and the parental unfitness of Russell Lee Settle to recommend that the petition for adoption be denied."

I also note a jurisdictional matter which I think is dispositive of this entire proceeding. Appellant raised it to the trial court but it was denied. It was raised at oral argument, but not addressed or disposed of satisfactorily. The divorce decree which awarded custody of the child to Jana Settle was entered by the circuit court of Madison County. That same decree granted appellant rights of visitation, as he was a party to that proceeding. It seems clear that the law in Illinois, and the majority of jurisdictions, is that awards of custody are by their very nature interlocutory, always subject to modification, and therefore the court

which initially entered an order relating to custody maintains continuous and exclusive jurisdiction over custody matters. *Sommer v. Borovic* (1977), 69 Ill. 2d 220, 227, 370 N.E.2d 1028.