(No. 90446.—

*In re* A.W.J. (Jean Tawrel, Appellee, v. Linda Patterson *et al.*, Appellants).

*Opinion filed October 18, 2001.*

Neal W. Cerne, of Wheaton, for appellants.

William R. Axley, of Addison, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

A.W.J. is a minor whose father killed his mother. While A.W.J.'s father was in pretrial custody, A.W.J.'s maternal grandmother filed a custody petition in the circuit court of Du Page County pursuant to section 601(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/601(b) (West 1996)). The petition was opposed by the paternal grandparents. The trial court granted custody to the maternal grandmother in a final order which contained Rule 304(a) language. The paternal grandparents appealed, and the appellate court affirmed (316 Ill. App. 3d 91). The father died while the appeal was pending. We granted leave to appeal. 177 Ill. 2d R. 315(a). The sole question on which the paternal grandparents sought leave to appeal is whether the maternal grandmother had standing to bring the petition. We now affirm.

## BACKGROUND

A.W.J. was born to Aileen Tawrel and Richard J. on August 13, 1995. Aileen and Richard lived together, with A.W.J., until July 21, 1996, on which date Richard killed Aileen. After Aileen's death, before his apprehension by the authorities, Richard brought A.W.J. to the home of Ruth Tovella, Richard's grandmother. On July 23, Jean Tawrel, A.W.J.'s maternal grandmother, went to Tovella's home and retrieved A.W.J.

A week later, Jean filed a petition for guardianship of A.W.J. pursuant to the Probate Act of 1975 (755 ILCS 5/11—1 *et seq.* (West 1994)). However, the circuit court dismissed this petition for lack of subject matter jurisdiction in August, after Richard appointed his mother, Linda Patterson, short-term guardian of A.W.J. See 755 ILCS 5/11—5.4 (West 1994). Thereafter, Richard continually

reappointed Linda short-term guardian of A.W.J. every 60 days.

After the dismissal of the Probate Act petition, A.W.J. was placed in the custody of Linda Patterson and Mitch Patterson, her husband. Jean then filed the petition which forms the basis for the instant proceedings, seeking custody of A.W.J. pursuant to section 601(b) of the Act (750 ILCS 5/601(b) (West 1994)). In addition to custody, the petition also requested: that the court block any further visitation with Richard; that Richard's parental rights be terminated; and that Jean be permitted to adopt A.W.J.

The Pattersons moved to dismiss the petition for lack of standing. The Pattersons noted that the statute permits a nonparent to initiate a custody proceeding only with respect to a child not in the "physical custody" of one of his parents. See 750 ILCS 5/601(b)(2) (West 1994). They argued that Richard retained legal custody of A.W.J. despite his incarceration, and Jean lacked standing because she was not in possession of A.W.J. The trial court denied the motion.

After the denial of the motion to dismiss, the Pattersons filed a counter-petition for custody under section 601(b) of the Act. There, they alleged that A.W.J. "is not within the physical possession of his natural father, the sole surviving parent, [Richard]," and that "the physical custody of [A.W.J.] has been voluntarily relinquished by [Richard] to [the Pattersons]."

The court conducted a hearing to determine what custody arrangement would be in the best interests of A.W.J. The court heard testimony from the parties involved, as well as expert testimony. Afterwards, the court granted sole custody to Jean and curtailed all contact between A.W.J. and his father. The court reserved ruling on the issues of termination of parental rights and adoption. Shortly thereafter, the court entered an order

to the effect that the ruling on custody and visitation was final and there was no just reason for delaying enforcement or appeal. See 155 Ill. 2d R. 304(a). The Pattersons filed a timely notice of appeal.

Before the appellate court, the Pattersons contended that Jean lacked standing to petition for custody under section 601(b); that the trial court should have treated the proceeding as a petition to modify custody, rather than as an original custody petition; and that the trial court's ruling awarding custody to Jean was against the manifest weight of the evidence. 316 Ill. App. 3d at 92. With respect to the first issue, the appellate court concluded that Jean had standing because A.W.J. was not in the physical custody of either parent, since "it is not possible for a parent who is incarcerated to act as the physical custodian of his or her children." 316 Ill. App. 3d at 98. In an unpublished portion of the disposition, the court rejected the other two arguments as well, and affirmed the trial court in all respects. The Pattersons then filed for leave to appeal to this court. See 177 Ill. 2d R. 315(a).

## ANALYSIS

### I

Although multiple issues were raised before the appellate court, the only question the Pattersons raised in their petition for leave to appeal to this court is whether Jean had standing to file her petition. In their arguments concerning this issue, the parties debate the meaning of section 601(b)(2) of the Act, specifically the provision which allows nonparents to commence custody proceedings if a child "is not in the physical custody of one of his parents." 750 ILCS 5/601(b)(2) (West 1992). Jean contends that A.W.J. should not have been considered to be in Richard's "physical custody" during Richard's incarceration. The Pattersons disagree, noting that

Richard had not voluntarily abandoned his child; that he still had *legal* custody of A.W.J.; and that he had not yet, at the time the motion to dismiss was decided, been found guilty of the murder.

Although the parties devote most of their energy to this issue, in the circumstances of this case we need not decide whether the trial court acted correctly in denying the motion to dismiss. As we shall explain below, (1) the standing requirement imposed on nonparents pursuant to section 601(b)(2) is not jurisdictional; (2) the parental interests sought to be protected by section 601(b)(2) are no longer at issue in this case because Richard has died; and (3) it would be against A.W.J.'s best interests to reverse the award of custody.

First, even assuming, *arguendo*, that the trial court did err in failing to dismiss Jean's petition, lack of standing to file a petition under section 601(b) of the Act does not implicate the circuit court's jurisdiction. *In re Custody of McCuan*, 176 Ill. App. 3d 421, 425 (1988). See also *In re Custody of K.P.L.*, 304 Ill. App. 3d 481, 486 (1999) (and cases cited therein) (lack of standing to file petition under 601(b) is an affirmative defense which is waived if not pled). See generally *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494 (1988) (holding that, in Illinois, lack of standing is an affirmative defense, and contrasting Illinois with federal courts "where lack of article III (U.S. Const., art. III) standing is a bar to jurisdiction"); see also *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 352 (1997) (Freeman, C.J., dissenting) (noting that common law standing is an "affirmative defense" which "must be pleaded or else it is waived"). As our appellate court has explained, a nonparent's "standing" under section 601(b)(2) does not refer to whether a litigant has a justiciable interest in a controversy (see *In re Estate of Wellman*, 174 Ill. 2d 335, 344 (1996)). It is

merely a threshold issue, and thus although the nonparent's standing must be determined before proceeding to a "best interests" determination, it is not a component of the court's subject matter jurisdiction. *In re Custody of McCuan*, 176 Ill. App. 3d at 425. Because the error alleged is not jurisdictional, we would not be required to vacate the court's order even if we found the court to have erred.

Second, in the circumstances of this case, any error was harmless, for regardless of whether Jean had standing under section 601(b)(2) at the time she brought her petition, Richard, as previously noted, has since died. The standing requirement of section 601(b)(2) of the Act is designed to "ensure[ ] that the superior right of natural parents to the care and custody of their children is safeguarded." *In re Petition of Kirchner*, 164 Ill. 2d 468, 491 (1995). This purpose can no longer be served after both of the minor's parents have died, at which point the minor would clearly no longer be in the physical custody of either of his parents. Thus, again, even assuming that Jean lacked standing to bring her petition at the time she filed it, she did have standing to do so after Richard's death. And it would serve no purpose to remand for Jean to refile her petition, when no remaining party to the case was prejudiced by any error.

Finally, and most overriding, not only would reversal for a violation of section 601(b)(2) not serve to protect the interests of any remaining party to the case, it would be greatly against the interests of A.W.J. The circuit court has already determined that it is in the best interests of A.W.J. to be placed in the custody of Jean. Like proceedings under the Adoption Act (750 ILCS 50/1 *et seq.* (West 1994)) and the Juvenile Court Act of 1987 (705 ILCS 405/2—1 *et seq.* (West 1994)), custody proceedings under the Marriage and Dissolution of Marriage Act are guided by the overriding lodestar of the best interests of the

child or children involved. *Moseley v. Goldstone*, 89 Ill. App. 3d 360, 369 (1980). See also *Prince v. Herrera*, 261 Ill. App. 3d 606, 611 (1994) (best interests of the child are of paramount concern in custody proceedings); *In re Marriage of Petraitis*, 263 Ill. App. 3d 1022, 1030 (1993) (same); *cf. Sommer v. Borovic*, 69 Ill. 2d 220, 233 (1977) (when minors are involved in dissolution proceedings "the court has the authority and the responsibility to act for the child's care, custody and support until it reaches majority," and "the court's primary concern obviously is not the wishes of the parents but rather the best interests of the child"). This factor also weighs heavily against reversal.

In this case any error the court may have committed in finding Jean to have standing based on Richard's pretrial incarceration did not result in a jurisdictional defect and did not affect the proceedings. Because Richard subsequently died, a nonparent could now bring a petition under section 601(b)(2) of the Act, as no parent remains to be protected by section 601(b)(2). No remaining party to the case was affected by the purported error. Finally, it would be against the best interests of A.W.J. to require a retrial in the instant case, because the trial court already has found what placement is in the best interests of A.W.J., and no suggestion is raised before this court that the circuit court's conclusion was against the manifest weight of the evidence. Given all of these factors, we believe that the result in this case must be affirmed.

Because of our resolution of this issue, we need not determine whether the circuit court did, in fact, err in finding Jean to have standing based on Richard's incarceration. Nor need we consider what, if any, preclusive effect might be accorded to the allegations in the Pattersons' counter-petition for custody, that A.W.J. was "not within the physical possession of" Richard and

that Richard had "voluntarily relinquished" physical custody of A.W.J. to the Pattersons.

## II

As previously noted, Jean's standing to bring the petition was the sole issue raised in the petition for leave to appeal. In their brief to this court, the Pattersons raise a second, separate issue. They contend that even though the court never technically awarded them even temporary custody of A.W.J., the court should have treated the action as a proceeding to *modify* custody, rather than as an initial custody determination, because they had cared for A.W.J. for almost three years by the time the court rendered its decision.

Our Rule 315(b)(3) requires a petition for leave to appeal to state "the points relied upon for reversal of the judgment of the Appellate Court." 177 Ill. 2d R. 315(b)(3). As Jean notes, issues not addressed in the petition for leave to appeal are not properly before this court, but are waived. *City of Naperville v. Watson*, 175 Ill. 2d 399, 406 (1997); *Federal Deposit Insurance Corp. v. O'Malley*, 163 Ill. 2d 130, 154 (1994); *Deal v. Byford*, 127 Ill. 2d 192, 200 (1989). We see no reason to override the waiver (see *Deal*, 127 Ill. 2d at 200-01), especially in light of the Pattersons' admission that "the law does not create any presumptions in favor of temporary custodians." They rely solely on *In re Marriage of Hefer*, 282 Ill. App. 3d 73 (1996), which states that "[w]here there has been a lengthy period of temporary custody, the case may be more like a petition to modify custody than like an initial award of custody." *Hefer*, 282 Ill. App. 3d at 77. However, the *Hefer* court went on specifically to distinguish initial custody determinations from petitions to modify on this precise issue. *Hefer*, 282 Ill. App. 3d at 78 ("there is no presumption in favor of the existing custodian under section 602 [of the Act] as there is in modification cases under section 610"). The case is also factually distin-

guishable. There, the children had been in the mother's custody pursuant to an agreed-upon temporary custody order, and the father had proposed to take them out of state, which in and of itself requires a best interests determination with the burden of proof on the party proposing the removal. See 750 ILCS 5/609(a) (West 1994). No similar circumstances exist in this case. Accordingly, as the Pattersons have offered no authority which supports their position, and considering especially that the appellate court addressed this issue, we see no reason to override the waiver. See *People v. Ward*, 113 Ill. 2d 516, 523 (1986) (refusing to reach issue waived because of failure to include in petition for leave to appeal, where appellate court had already reviewed issue).

## CONCLUSION

For the reasons above stated, we affirm the judgment of the appellate court.

*Affirmed.*