THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BRYAN BRADY *et al.*, Defendants-Appellants.

(No. 11599;

Fourth District—September 13, 1972.

Barbara A. Burkett and Steven Rayder, both of County Legal Aid Society, of Danville, for appellants.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Herman R. Tavins, Assistant Attorneys General, of counsel,) for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

On March 20, 1969, a petition was filed in the circuit court of Vermilion County asserting that Robert Lee Brady, then age 9 months, was a neglected child in that "the parents with good cause are unable to give proper or necessary support as required by law, or medical or other remedial care recognized under state law, or other care necessary for his well-being." A like petition was filed by the same petitioner with reference to James Bryan Brady, then age 1½ years. On the same day, the parents filed an entry of appearance and a consent form consenting to custody or guardianship of each of the children and purporting to grant to the court or any person appointed by the court as guardian the power and authority to consent to the adoption of the children. The court thereupon entered an order regarding the temporary custody of the children, granting custody and guardianship to the chief of the division of child welfare of the Department of Children and Family Services, pending further hearing or disposition as may be determined by the court.

On May 29, 1969, at a brief hearing, classed as an adjudicatory hearing, the parents were present in court and in response to an inquiry from the court as to whether they had any questions about the proceedings then in progress, Mr. Brady inquired as to whether it dealt with the temporary guardianship of both children. The court indicated that it did and that if the parents felt they were unable to provide the parental custody and support for the children at that time, the Department would

assume custody and guardianship at that time. The court further advised the parents that "in the event your circumstances should change so that you are again in position to assume the custody and guardianship of these children, you can come back into court and ask for their return." This hearing was a "consent" proceeding and no evidence establishing the children to be neglected was heard.

On December 4, 1970, a supplemental petition was filed asserting that the children had been adjudged to be neglected, and that subsequent to such adjudication, the parents had failed to take any substantial steps towards providing a home for the children and failed to maintain any interest, concern, or responsibility as to the minors' welfare and have failed to support the children.

On February 22, 1971, at a hearing on the supplemental petition, a witness—Alice Hunter—a case worker supervisor of the Department of Children and Family Services, was called to testify. She identified petitioner's Exhibit 1 as being a document prepared by a case worker, said document being referred to as the "court report" which apparently was prepared on October 26, 1970, by one Gary L. Bowar, then a staff member of the Department. Objection was made to the receipt in evidence of the report. This same witness also identified petitioner's Exhibit 2 being referred to as a "running record" being a summary of the contacts of the Department with reference to this family. Objection was made to this document. The objection was overruled, the two documents were admitted, although in his ruling the trial judge discussed the fact that the documents would be inadmissible at an adjudicatory stage under the applicable statute. The trial court expressed the opinion that the hearing then being held was not technically a dispositional hearing but rather one that involved both adjudication of status as well as disposition and he admitted the documents for the very limited purpose of establishing the records of the Department of Children and Family Services taken in the ordinary course of their professional affairs. In so doing, he expressed the view that he was not going to exclude a general report covering the contacts by the Department just because it might include somewhere in it an opinion that was not factually based or contained an item of hearsay. In ruling that the document was admissible, he indicated to the attorney for the parents that if they wish to object to a portion or all of the report, they would have an opportunity to do so.

At a subsequent hearing in April of 1971, the witness Gary Bowar appeared and testified. It was developed that Bowar had been a case worker for the Department for the period June 22, 1970, to January 15, 1971. The court report prepared by him made reference to information antedating his employment by the Department. The so-called "running

record" detailed the contacts by the case workers with the Brady parents and contained substantial conclusionary and opinion information.

The Illinois Juvenile Court Act provides for adjudicatory hearings and dispositional hearings. A minor under the age of 18 years who is alleged to be neglected, as that term is defined in paragraph 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, sec. 702—4), is subject to a hearing to determine whether or not the named minor is a neglected child. *After* the adjudicatory hearing and in the event of a determination that the child is neglected, a further hearing is held to determine the appropriate disposition to be made of the neglected child, limited by the kinds of dispositional orders available to the court. See Section 5—1, Ill. Rev. Stat. 1971, ch. 37, sec. 705—1.

■■  Section 4—6 of the Act (Ill. Rev. Stat. 1971, ch. 37, sec. 704—6), provides that the standard of proof and the rules of evidence of civil proceedings shall be applicable to the adjudicatory hearing. Section 5—1 of the Act (Ill. Rev. Stat. 1971, ch. 37, sec. 705—1), provides that all evidence helpful in determining the question of disposition, including oral and written reports, may be admitted and may be relied upon to the extent of their probative value, even though not competent for the purposes of an adjudicatory hearing.

The trial court in this case ultimately entered an order depriving the natural parents of their rights as parents and authorized the guardian to consent to the adoption of the children. This was as a result of the hearing wherein the Department reports were admitted. The narrow issue on this appeal is whether dispositional evidence may properly be received at a hearing which in fact is a combination dispositional and adjudicatory hearing. We hold that it is not.

■■  The reports received in evidence in this case contain much opinion and are for the most part conclusionary in their language and negative in their focus. The information contained in these reports would obviously be of assistance to, and have probative value for, determining appropriate disposition. However, the hearing held in this case was one to adjudicate the issue of whether the children were in fact neglected. The information in these reports clearly was not and cannot be admissible at such a hearing.

The availability of the case worker who prepared the report does not remedy the objection for the simple reason that much of the information is gleaned from third party sources, is a distillation of the file, and is, of course, conclusionary and rank hearsay. The legislature has provided that in adjudicating the status of neglected or dependent children, the trial court is limited by the rules of evidence applicable to civil cases. This type of information that was submitted to, and in view of this record

necessarily considered by, the trial court is not admissible in such proceeding.

■■ The People assert that the adjudicatory hearing was the May 1969 proceeding and based upon the consent of the parents then filed. Our view of this record indicates the consents were filed upon the understanding that temporary custody—not relinquishment of total parental rights—was then the only issue.

The judgment of the circuit court of Vermilion County is reversed and this cause is remanded to that court for a new adjudicatory hearing and thereafter, if necessary, a further dispositional hearing.

Reversed and remanded with directions.

SMITH and SIMKINS, JJ., concur.