# Illinois Official Reports

## Appellate Court

*In re G.V.*, **2018 IL App (3d) 180272**

| | |
|---|---|
| Appellate Court Caption | *In re* G.V., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Sarah N. and Vincente V., Respondents-Appellants). |
| District & No. | Third District <br> Docket Nos. 3-18-0272, 3-18-0274 cons. |
| Filed <br> Rehearing denied | October 5, 2018 <br> December 12, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 15-JA-152; the Hon. Paula Gomora, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Daniel J. Kallan, of Joliet, for appellant Sara N. <br><br> Neil J. Adams, of Joliet, for appellant Vincente V. <br><br> James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. <br><br> Kristen Messamore, of Hammel Law Offices, P.C., of Joliet, for the minor. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice Lytton concurred in the judgment and opinion.


**OPINION**

¶ 1     The trial court ordered G.V. a ward of the court and found respondents Sarah N. and Vincente V. unfit and that it was in the best interest of their child, G.V., that their parental rights be terminated. Both Sarah and Vincente appealed. We reverse and remand.

¶ 2                                    FACTS

¶ 3     The minor, G.V., was born on November 2, 2015, to respondent Sarah N. She named respondent Vincente V. as the child's father. Based on a hotline call, G.V. was taken immediately into the custody of the Department of Children and Family Services (DCFS). The call was made by a caseworker from a DCFS parallel agency in Connecticut, where Sarah had previously lived. The information DCFS received was that Sarah's two other children had been removed from her care, her oldest child lived with the child's father, and Sarah's rights to the other child were in the process of being terminated by the Connecticut court. The information also included that Sarah's father, with whom she was living in Illinois, had lost his parental rights to her when she was a child due to physical and sexual abuse.

¶ 4     On November 9, 2015, the State filed a petition alleging that G.V. was neglected based on an injurious environment. 705 ILCS 405/2-3(1)(b) (West 2016). A shelter care hearing took place. Sarah appeared, but Vincente did not. The sole witness was Latanya Hoskins, a DCFS investigator. She spoke with Sarah's caseworker in Connecticut, who said that Sarah's children had been removed from her care and the State was proceeding with a termination case for the second child and that the first child was living with her father. The trial court found there was probable cause that G.V. was neglected based on an injurious environment. The trial court appointed a court appointed special advocate (CASA) and guardian *ad litem* (GAL) to represent G.V. Vincente appeared at a February 2016 hearing and stated that he filed a voluntary acknowledgement of paternity.

¶ 5     An adjudicatory hearing took place on May 4, 2016. The court noted that there was still no finding of paternity. Vincente stated his name was added to G.V.'s birth certificate but he left the document back home in Connecticut. The trial court ordered a deoxyribonucleic acid (DNA) test to determine G.V.'s paternity. The State presented Alexandra Bunker, the placement supervisor for DCFS, as its witness and submitted People's exhibit No. 1, which was the DCFS investigatory report. Both Sarah and Vincente objected to admission of the report on the basis of foundation, maintaining that, after the first three or four pages, the report was inadmissible hearsay. Sarah also objected on the basis the report was not a business record and could not be admitted under that hearsay exception. In response, the State characterized the entire report as an indicated report and argued its admissibility.

¶ 6     The trial court sustained the objection as to business records but found that the report was admissible as an indicated report. The trial court determined that the allegations of an injurious

environment were supported by the State's exhibit and that G.V. was neglected. The court found Sarah's two other children were removed from her care in Connecticut and she did not complete services there so that her children could be returned to her. The court also found that Vincente had not established paternity. The court informed the parties that their compliance with the service plan tasks was now mandatory and urged Vincente to do the integrated assessment.

¶ 7    The court further instructed and admonished Sarah and Vincente as follows:

> "This is the first part of the hearing. This Order right now that is going to be entered is not appealable. It is not appealable until we do the second part which is the dispositional part of the hearing or the dispositional hearing when it is decided whether or not [G.V.] should be made a ward of the Court. Now, that means that it's under my supervision. You are under my supervision on whether or not you are performing the services that are going to be put into the service plan.
>
> At the point it's decided, if I were to decide that [G.V.] should be made a ward of the Court, at this point, the Order becomes appealable, and you can ask a higher Court whether or not my determination is well founded. Okay?
>
> So at this point, this is just one part of the hearing.
> ***
> Do you understand what my admonishment is that you're going to need to comply with the terms of the service plan that D.C.F.S. is going to put in place; otherwise, you risk termination of your parental rights?"

Both Sarah and Vincente acknowledged they understood the admonishment.

¶ 8    Sarah thereafter moved to reconsider the neglect finding, arguing the DCFS investigatory report should not have been admitted in whole and the State did not meet its burden of establishing neglect. Vincente did not join in her motion or file his own motion to reconsider. A hearing took place. Sarah conceded that pages one through four of the report constituted an indicated report but maintained the rest of the report was hearsay. The trial court considered that there was enough information in the first four pages to support the neglect finding and that no other contrary evidence was presented. The trial court denied the motion to reconsider.

¶ 9    A dispositional hearing took place on July 13, 2016. Vincente presented the amended birth certificate naming him as G.V.'s father but had not yet participated in the integrated assessment. Sarah had only contacted DCFS and participated in visitation. According to the State, Sarah refused to sign consent forms so DCFS could investigate what services she completed in Connecticut. The court noted that Sarah indicated she wanted to obtain the information herself. The court determined that Sarah failed to comply with her service tasks and that Vincente had failed to complete an integrated assessment or necessary consent forms and had not filed a paternity action. The trial court reiterated its previous finding that G.V. was neglected on the basis of an injurious environment and declared him a ward of the court.

¶ 10   The court admonished the parents as follows:

> "But do you understand that you are going to need to comply with the service plan with participating in an integrated assessment to be assessed for services, and that if they require that you are going to need to do those, absent any appeals that you might take administratively or judicially, whatever, otherwise your son is going to remain in foster care until those services are well under way.

Otherwise, if you don't do the services that are required of you, then you risk the termination of your parental rights.

I am asking you if you understand that that is what you need to do?"

¶ 11 A November 2016 service plan indicated that Sarah had started some services but refused others and that Vincente maintained contact with DCFS but had not participated in an integrated assessment. Service plan reports dated March and May 2017 noted concerns about Sarah's mental health issues, cognitive limitations, and history of domestic violence and expressed that she lacked the capacity to safely parent G.V. Vincente had participated in the integrated assessment but provided only limited information. He refused to name his wife or other children who lived with him. A May 2017 permanency review letter stated that Sarah has a future risk of becoming a victim or perpetrator of domestic violence and her children were at risk of exposure to domestic violence. The letter further stated that, even with services, Sarah was not able to parent her children in Connecticut because of her mental health issues. Vincente had not yet undergone DNA testing or participated in the integrated assessment in a meaningful manner. Finally, the letter recommended the case proceed to legal screening.

¶ 12 At a June 1, 2017, hearing, the trial court vacated a parenting plan that had been entered by another judge in response to a custody petition filed by Vincente on May 31, 2017. The permanency review report indicated that the caseworker considered Sarah's progress unsatisfactory. CASA noted its concern regarding the case and its desire for the case to go to legal screening. The caseworker stated that because Vincente had not completed the integrated assessment, DCFS could not assess the viability of G.V. living with Vincente.

¶ 13 The State filed a motion to terminate Sarah's and Vincente's parental rights. The petition alleged Sarah and Vincente failed to maintain a reasonable degree of interest, concern, or responsibility for G.V., failed to make reasonable efforts to correct the conditions that were the basis for G.V.'s removal, during the time period May 4, 2016, through February 28, 2017, and failed to make reasonable progress toward G.V.'s return within nine months after the neglect adjudication, such period being May 4, 2016, through February 28, 2017.

¶ 14 A trial took place on the petition in April 2018. The State presented Theresa Bruns, the caseworker beginning in August 2016. She testified Vincente refused to answer a variety of questions on the integrated assessment, maintaining that he had a constitutional right not to answer the questions and that he was being profiled. She was on bereavement leave from December 2016 to January 2017 and on medical leave from September 2017 to January 2018.

¶ 15 Following the State's case, both Sarah and Vincente moved for directed verdicts on the failure to maintain a reasonable degree of interest, concern, and responsibility as to G.V.'s welfare allegation. Sarah also moved for a directed verdict on the failure to make reasonable efforts allegation, and Vincente moved for a directed verdict on the failure to make reasonable progress allegation. The court granted the motion as to Sarah's and Vincente's reasonable interest allegations and denied it as to the other allegations. It never ruled on the lack of reasonable concern allegation.

¶ 16 David Klemm, a psychologist with One Hope United who had treated Sarah from December 2016 to April 2018, testified that she had made significant progress in counseling. He explained that in all other instances where DCFS required a psychiatric assessment it would ask him for a letter to the caseworker recommending the assessment. There was no request regarding Sarah. Tyler Reynolds, an Easter Seals home visitor/parent educator testified that

Sarah had made significant improvement in her parenting skills but still had room for greater improvement.

¶ 17    Sarah testified. She did not need domestic violence counseling, and she was unable to find transportation to attend. She repeatedly asked her caseworkers for transportation assistance, but they did not provide it. She would have attended if she had a ride. She did not have a psychiatric assessment because she thought it was the same as the mental health assessment she did have done. The first time she was aware they were different assessments was in November 2017, but there was no further discussion about it.

¶ 18    Vincente testified. He lived in Connecticut, where he worked as a taxi driver. He had had several video visitations with G.V. and four in-person visits. He filed a custody petition. After the integrated assessment, he was not advised of any more services he needed to complete. G.V. could have gone home with him, and he was ready to bring G.V. home. His family agreed with his decision. Vincente's exhibit No. 1, the voluntary acknowledgement of paternity, was admitted into evidence.

¶ 19    The State called Bruns as a rebuttal witness, who testified that Sarah never indicated she lacked transportation to domestic violence counseling and if she had asked, DCFS would have provided it. At the close of evidence, Vincente renewed his motion for directed verdict, which the trial court denied.

¶ 20    The court entered an order on May 2, 2018, finding both parents unfit. The court found Sarah failed to maintain a reasonable degree of responsibility as to G.V.'s welfare, as indicated by her refusal to participate in domestic violence counseling or have a psychiatric assessment. She also failed to find a job, lived with her father whose parental rights had been terminated, and relied on him for support. The court found Sarah failed to make reasonable efforts to correct the conditions that resulted in G.V.'s removal, including refusing to participate in domestic violence counseling despite her history of domestic violence or in the psychiatric assessment despite her admitted diagnoses of multiple mental illnesses. Lastly, the court found Sarah failed to make reasonable progress toward the return of G.V. to her care, pointing to Sarah's failure to complete her service tasks and her unsatisfactory progress toward G.V.'s return. It pointed to her lack of stable, suitable housing and employment as well as the fact that visitation continued to be supervised.

¶ 21    The trial court found Vincente unfit on the basis of his failure to maintain a reasonable degree of responsibility for G.V. and to make reasonable progress to G.V.'s return home. The court noted that, as for responsibility, Vincente did not attend the shelter care or reshelter care hearings. He failed to complete the integrated assessment, and DCFS was unable to verify whether Vincente's home was suitable for G.V. As to reasonable progress, Vincente did not execute a voluntary acknowledgement of paternity until March 31, 2016, and did not amend the birth certificate until April 2016. He filed a custody petition in April 2017, which was outside the period at issue. His visitation remained supervised throughout the pendency of the proceedings.

¶ 22    A best interest hearing took place, and the trial court found that it was in G.V.'s best interest to terminate Sarah's and Vincente's parental rights. The court entered an order terminating Sarah's and Vincente's rights. Both Sarah and Vincente appealed.

¶ 24    There are several issues in this consolidated appeal. Both Sarah and Vincente argue the trial court failed to admonish them of their appeal rights after it made G.V. a ward of the court. Sarah argues that the court erred in terminating her parental rights and relied on improper hearsay in reaching its conclusion. Vincente argues that the court erred in finding him dispositionally unfit.

¶ 25    We begin with Sarah's argument that the trial court relied on inadmissible hearsay in ultimately terminating her parental rights. Although Vincente objected at the adjudicatory hearing, he did not join Sarah in her motion to reconsider the trial court's admission of the investigatory report or raise the issue on appeal and has forfeited it. See *In re S.H.*, 2014 IL App (3d) 140500, ¶ 21 (issues not raised are forfeited). Nevertheless, because the trial court's findings affect Vincente's fundamental right to parent, we will apply plain-error review and consider this issue as to him as well as Sarah. See *id.* (termination of parental rights affects fundamental liberty interest).

¶ 26    Sarah complains the court reached its conclusion by relying on impermissible hearsay contained in the DCFS investigatory report, the exhibit used at the adjudicatory hearing on May 4, 2016. The report stated that Sarah's other children were removed from her care by the State of Connecticut and that she failed to comply with services in Connecticut. The report included the conclusion of the Connecticut agency, which determined that Sarah lacked adequate parenting skills even with services. It also provided information on Sarah's circumstances, including that her father lost his parental rights to her when she was a toddler due to physical and sexual abuse based on information from the Connecticut agency.

¶ 27    The trial court overruled Sarah's and Vincente's objections to the evidence, finding that it was admissible as an indicated report. We disagree, consider it to be inadmissible hearsay, and find the trial court erred in admitting it at the adjudicatory hearing.

¶ 28    Hearsay is " 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *In re Charles W.*, 2014 IL App (1st) 131281, ¶ 35 (quoting Ill. R. Evid. 801(c) (eff. Jan. 1, 2011)). The rules of evidence apply to adjudicatory hearings. 705 ILCS 405/2-18(1) (West 2016). Although hearsay may be admitted at the dispositional hearing, it is inadmissible at the adjudicatory hearing unless it falls under an exception under the Juvenile Court Act of 1987. *In re Brooks*, 63 Ill. App. 3d 328, 341 (1978). We review *de novo* whether something qualifies as hearsay and whether a document is an indicated report. *In re M.F.*, 304 Ill. App. 3d 236, 241 (1999); *In re J.C.*, 2012 IL App (4th) 110861, ¶ 19.

¶ 29    An indicated report filed pursuant to the Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 2016)) is admissible at an adjudicatory hearing. 705 ILCS 405/2-18(4)(b) (West 2016). An indicated report shall include " 'any other information that the person filing the report believes might be helpful in establishing the cause of such abuse or neglect and the identity of the person believed to have caused such abuse or neglect.' " *In re J.C.*, 2012 IL App (4th) 110861, ¶ 21 (quoting 325 ILCS 5/7 (West 2010)). A report should include, as is possible, information regarding " 'any previous incidents of suspected child abuse or neglect.' " *Id.* (quoting 89 Ill. Adm. Code 300.40(c) (2012)). Information received by DCFS through a hotline call may be admitted to show why an investigation began, but it is not sufficient to prove the truth of the allegations. *In re Wheeler*, 86 Ill. App. 3d 564, 569 (1980).

¶ 30    The investigatory report that was admitted as an indicated report under the statutory hearsay exception contained substantial amounts of information that was unverified and lacked any supporting documentation. Even the first several pages, which the court found were sufficient in themselves to support the neglect finding, contained information based on unsubstantiated hearsay. The narrative offered that Sarah was involved in an open case in Connecticut, which had removed her two children from her care. A petition to terminate parental rights was pending. Sarah fled to Illinois to avoid the removal of her third child, G.V., and resided with her father. The narrative further stated that, according to Sarah, her father's parental rights were terminated when she was a child based on physical and sexual abuse. The Connecticut source did not know if he was indicated, convicted, or registered for sexual abuse incidents. The narrative included concerns of the Connecticut agency that Sarah had severe mental health issues, cognitive limitations, and a history of domestic violence and the agency's conclusion that Sarah lacked the capacity to safely parent a newborn.

¶ 31    The DCFS representative at the adjudicatory hearing testified that the exhibit was a true and accurate copy of the investigative report and qualified as an indicated report. She provided no other foundation or did not explain whether DCFS had received the files from the Connecticut agency or was relying on the phone conversations between caseworkers. The DCFS witness, Bunker, was a placement supervisor who was familiar with the case file but had not participated in the investigation. The investigators did not testify. There was no detailed explanation of the Connecticut findings or certified copy of them. There was no explanation of the services with which Sarah was required to comply in Connecticut and her progress in the service tasks. In essence, we have the placement supervisor testifying to information that the investigators discovered while in phone conversations with an unnamed caseworker at an unnamed agency in Connecticut. The record before us does not include, and we are unaware whether the investigators had, any supporting records, such as the Connecticut agency file or court documents.

¶ 32    We do not imply that the information DCFS provided at the adjudicatory hearing was inaccurate or misleading. Our concern is that the information was provided and accepted without any verified basis in the record. The witness's characterization of the report as an indicated report does not make it one. An indicated report is to include information helpful to establish neglect and the person responsible for it and also include information regarding previous incidents of abuse. We do not interpret the definition to allow hearsay and, in this case, double and triple hearsay to be admitted solely on the basis that the information is part of a report characterized as an indicated report by DCFS. See *In re A.B.*, 308 Ill. App. 3d 227, 237 (1999) (finding service plans inadmissible where they were based on the witness's "secondhand knowledge, at best, of the events that lead to the conclusions contained in the service plans"). Similarly, the DCFS report was not admissible under general statutory exceptions concerning hearsay. See Ill. R. Evid. 803 (eff. April 26, 2012) (listing hearsay exceptions); Ill. R. Evid. 902 (eff. Jan. 1, 2011) (allowing specified self-authenticating report to be admitted although comprising hearsay).

¶ 33    In *People v. Brady*, 7 Ill. App. 3d 404, 407 (1972), the issue was whether DCFS departmental reports were admissible at a joint adjudicatory and dispositional hearing. Like the instant case, the court relied on agency reports prepared by a caseworker and a record of agency contacts made with the family. *Id.* The court determined the reports were admissible under the business records exception, although the reports included opinions that were not

factually based and were hearsay. *Id.* The reviewing court acknowledged that much of the information was "gleaned from third party sources, [was] a distillation of the file, and [was], of course, conclusory and rank hearsay." *Id.* Noting the trial court was bound by the rules of evidence in civil cases, the reviewing court found the reports inadmissible in the adjudicatory hearing. *Id.*

¶ 34    In discussing the admissibility of the reports, the *Brady* court referenced the parents' due process rights to the care and custody of their children. *Id.* This concern guides us in reaching our disposition here. A parent has a fundamental due process right to the care, custody, and control of his or her children. *In re Andrea F.*, 208 Ill. 2d 148, 165 (2003). In termination proceedings, due process is "achieved by compliance with the provisions of the Juvenile Court Act and fundamental fairness." *In re O.S.*, 364 Ill. App. 3d 628, 638 (2006). We find the admission into evidence of the investigatory report as an indicated report did not comply with the Juvenile Court Act and deprived Sarah and Vincente of due process. The proper remedy is to vacate all orders entered on and after the May 4, 2016, adjudicatory hearing and begin anew with the wardship proceedings.

¶ 35    The next issue for our consideration is whether the trial court erred in finding Vincente dispositionally unfit. He maintains that the neglect finding was based on Sarah's conduct regarding her other children who were involved with the Connecticut courts and that the State did not present any evidence that he would be unable to properly parent G.V. We lack jurisdiction to consider this issue.

¶ 36    A party must appeal a final judgment within 30 days after entry of the final order from which the appeal is taken, or, if a postjudgment motion is filed, within 30 days after the court disposes of the final postjudgment motion. Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2015). Dispositional orders in juvenile court proceedings are generally final and appealable. *In re Alexander R.*, 377 Ill. App. 3d 553, 555 (2007). A reviewing court lacks jurisdiction over an untimely appeal. *In re C.S.*, 294 Ill. App. 3d 780, 787 (1998).

¶ 37    The unfitness finding was entered at the adjudicatory hearing in July 2016. It was a final and appealable order, which Vincente failed to timely appeal. We further find that, even if Vincente had been properly admonished, an appeal would not have altered the finding. Although there was no evidence he was responsible for the injurious environment necessitating the neglect finding, the trial court had little information to indicate that Vincente could properly care for G.V. He had not participated in an integrated assessment or filed for custody and was an unfit parent in the eyes of the court.

¶ 38    Because of our disposition on these issues, we do not reach the other issues raised on appeal. We note, however, that the trial court was required to admonish Sarah and Vincente at the dispositional hearing of their right to appeal. The Juvenile Court Act requires that if a child is found neglected and declared a ward of the court, the trial court must admonish the parents they must cooperate with DCFS, comply with the service plans, and correct the conditions that necessitated the child to be in the State's care or risk the termination of their parental rights. 705 ILCS 405/1-5(3) (West 2016). The court must also inform the parties of their appeal rights regarding the wardship order and any other final judgments. *Id.* On remand, proper admonishments should be provided Sarah and Vincente at the dispositional and other hearings as statutorily required.

¶ 39                                    CONCLUSION

¶ 40        For the foregoing reasons, the judgment of the circuit court of Will County is reversed and the cause remanded for proceedings consistent with this opinion.

¶ 41        Reversed and remanded.