2024 IL App (4th) 240701-U

NOS. 4-24-0701, 4-24-0702, 4-24-0703, 4-24-0704 cons.

<table>
<tr><td>NOTICE<br>This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).</td><td>IN THE APPELLATE COURT<br><br>OF ILLINOIS<br><br>FOURTH DISTRICT</td><td>FILED<br>September 12, 2024<br>Carla Bender<br>4th District Appellate<br>Court, IL</td></tr>
</table>

| | |
|---|---|
| *In re* Y.C., D.C., T.C., and L.C., Minors | ) Appeal from the |
| | ) Circuit Court of |
| (The People of the State of Illinois, | ) Winnebago County |
| Petitioner-Appellee, | ) Nos. 23JA427, |
| v. | )     23JA428, |
| Kayla D., | )     23JA429, |
| Respondent-Appellant). | )     23JA430 |
| | ) |
| | ) Honorable |
| | ) Francis M. Martinez, |
| | ) Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's adjudicatory and dispositional orders because no meritorious argument could be raised on appeal.

¶ 2    In November 2023, the State filed petitions for adjudication of wardship alleging the minors, Y.C. (born in January 2022), D.C. (born in November 2018), T.C. (born in May 2014), and L.C. (born in June 2013), were neglected. The trial court adjudicated the minors neglected and found respondent, Kayla D., unfit and unable to have custody of them.

¶ 3    Respondent appealed in each case and the appeals were consolidated for review. The minors' father is not a party to this appeal. Respondent's appointed counsel has now filed a motion for leave to withdraw with a supporting brief pursuant to *Anders v. California*, 386 U.S.

738 (1967). See *In re S.M.*, 314 Ill. App. 3d 682, 685-86, 732 N.E.2d 140, 143 (2000) (holding *Anders* applies to findings of parental unfitness and setting forth the procedure for appellate counsel to follow when seeking to withdraw). In his supporting brief, appellate counsel contends "no viable and non-frivolous grounds for appeal exist." We agree, grant appellate counsel's motion to withdraw, and affirm the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5            On November 22, 2023, the State filed petitions for adjudication of wardship, seeking to adjudicate the minors neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2022)). The petitions alleged the minors' environment was injurious to their welfare because (1) respondent had a history of placing them at risk of harm by engaging in acts of domestic violence, (2) their father had a history of placing them at risk by engaging in acts of domestic violence, and (3) they had been left at home alone for an unreasonable period of time (705 ILCS 405/2-3(1)(b) (West 2022)). As to Y.C. and D.C., the State also alleged their environment was injurious to their welfare because they were under 14 years of age and were left alone without supervision for an unreasonable period of time without regard for their mental or physical health, safety, or welfare (705 ILCS 405/2-3(1)(d) (West 2022)).

¶ 6            The trial court held a shelter care hearing on the same day the petitions were filed. Respondent was appointed counsel and waived her right to the hearing. The court entered an order placing temporary custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 7        On February 29, 2024, the trial court conducted an adjudicatory hearing. At the hearing, the minors' father stipulated to count II of each of the petitions, which alleged his acts of domestic violence had placed the minors at risk of harm.

¶ 8        Without objection by respondent, the State then introduced documentary evidence, including: (1) three group exhibits containing indicated child abuse or neglect reports from DCFS; (2) certified copies of six criminal complaints charging respondent with various offenses, including harassment through electronic communication (720 ILCS 5/26.5-3(a)(5) (West 2022)), three counts of endangering the life or health of a child (720 ILCS 5/12C-5(a)(1) (West 2022)), aggravated assault (720 ILCS 5/12-2(c)(1) (West 2022)), criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2022)), and domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)); (3) a certified copy of a petition for a stalking no contact order; and (4) certified copies of three petitions for orders of protection. After the trial court admitted the evidence, the State rested.

¶ 9        Respondent then testified she did not leave her children unattended. When police officers arrived to serve eviction papers, she was outside her house, sitting in her car. Y.C. and D.C. were sleeping inside the house at the time. Respondent testified she got out of her car when the police officers called her. Respondent acknowledged she left Y.C. and D.C. outside at her home on a separate occasion to go to her neighbor's house to get diapers, but she testified her cousin was arriving at the house as she left. Respondent also denied engaging in acts of domestic violence. Respondent testified she always ensured her children were safe if any violence occurred.

¶ 10        The trial court took the matter under advisement to review the evidence presented by the parties. On March 28, 2024, the court conducted a hearing and found the minors

neglected. The court found respondent's testimony was not credible because she minimized the clear domestic violence issues between respondent and the minors' father. The court also found the evidence established the minors were left alone prior to the arrival of police officers to conduct an eviction. Based on the evidence presented, the court concluded the State had proved all counts of the petitions by a preponderance of the evidence. Accordingly, the court entered an order adjudicating the minors neglected.

¶ 11 On April 24, 2024, the trial court conducted a dispositional hearing. The State asked the court to take judicial notice of the adjudicatory hearing, the integrated assessment, and two reports filed by respondent's caseworker following the integrated assessment. The court took judicial notice of those documents without objection by respondent.

¶ 12 The integrated assessment, completed on February 14, 2024, recommended respondent complete random drug screenings, complete domestic violence services, participate in individual psychotherapy, complete a parenting education course, participate in parent coaching, and participate in supervised visitation. The first caseworker report, dated March 19, 2024, indicated respondent had been arrested on February 2, 2024, and was participating in a trade class while in custody. The report noted respondent also expressed interest in participating in a parenting course while in jail. The second caseworker report, dated April 16, 2024, indicated respondent had been released from custody on April 5, 2024.

¶ 13 According to a proffer from respondent's counsel, respondent would testify she was currently employed at McDonald's, took a parenting course while incarcerated, was willing to sign releases as required by the integrated assessment, and now understood her responsibility to supervise the children. Respondent would have also testified she believed the agency was responsible for any delay in starting her services.

¶ 14　　　　Following argument by the parties, the trial court found respondent had not completed or shown sufficient progress toward completion of the required services. The court, therefore, concluded respondent was currently unfit or unable to have custody of the minors. The court entered a written dispositional order making the minors wards of the court and placing custody and guardianship with DCFS.

¶ 15　　　　Respondent filed timely notices of appeal in all four cases, and counsel was appointed to represent her on appeal. This court subsequently consolidated the appeals on the motion of respondent's counsel. On June 24, 2024, appellate counsel filed a motion for leave to withdraw and a supporting brief, asserting no viable or nonfrivolous grounds for appeal exist in this case. Appellate counsel provided proof of service of his motion and supporting brief on respondent, and this court granted respondent the opportunity to file a response. Respondent has not filed a response.

¶ 16　　　　　　　　　　　　　　　II. ANALYSIS

¶ 17　　　　Appellate counsel seeks to withdraw, contending there are no arguably meritorious issues for appeal. Under *S.M.* and *Anders*, counsel's request to withdraw must " 'be accompanied by a brief referring to anything in the record that might arguably support the appeal.' " *S.M.*, 314 Ill. App. 3d at 685 (quoting *Anders*, 386 U.S. at 744). Counsel is required to (1) briefly set forth the arguments supporting any potential issue on appeal, (2) explain the reasons those arguments are frivolous, and (3) conclude the case presents no viable grounds for appeal. *S.M.*, 314 Ill. App. 3d at 685.

¶ 18　　　　In his brief in support of his motion, appellate counsel states he has reviewed the record and no viable or nonfrivolous grounds for appeal exist. Counsel asserts there are no meritorious arguments challenging (1) the admissibility of the documentary evidence presented

by the State at the adjudicatory hearing, (2) the sufficiency of the evidence to support the trial court's finding of neglect, or (3) the sufficiency of the evidence to support the court's dispositional order. For the following reasons, we agree this appeal presents no issue of arguable merit.

¶ 19 The Juvenile Court Act sets forth a two-step process for deciding whether a minor should be removed from a parent's custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. The first step is the adjudicatory hearing, where the trial court considers only whether the minor is abused, neglected, or dependent. *A.P.*, 2012 IL 113875, ¶ 19 (quoting 705 ILCS 405/2-18(1) (West 2010)). If the trial court determines a minor is abused, neglected, or dependent, it proceeds to a dispositional hearing. *A.P.*, 2012 IL 113875, ¶ 21 (citing 705 ILCS 405/2-21(2) (West 2010)). At the dispositional hearing, the trial court determines whether making the minor a ward of the court is consistent with the health, safety, and best interests of the minor and the public. *A.P.*, 2012 IL 113875, ¶ 21.

¶ 20 A. Admissibility of Evidence Presented at the Adjudicatory Hearing

¶ 21 Counsel initially notes respondent did not object to the admission of any of the exhibits during the adjudicatory hearing. Accordingly, any challenge to the admissibility of those documents would be forfeited and may be reviewed only under the plain error rule. See *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 47, 139 N.E.3d 88 (stating while the plain error rule is most commonly applied in criminal proceedings, a ruling affecting a parent's fundamental liberty interest in raising his or her child may also be reviewed for plain error).

¶ 22 The plain error rule provides a "narrow and limited exception to the typical forfeiture rule applicable to unpreserved claims." *People v. Johnson*, 238 Ill. 2d 478, 484, 939 N.E.2d 475, 480 (2010). An unpreserved claim may be reviewed under the plain error rule when

- 6 -

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007).

The first step in plain error review is determining whether a clear or obvious error occurred. *Piatkowski*, 225 Ill. 2d at 565.

¶ 23        At an adjudicatory hearing, " 'the rules of evidence in the nature of civil proceedings *** are applicable.' " *In re M.D.*, 2022 IL App (4th) 210288, ¶ 61, 193 N.E.3d 933 (quoting 705 ILCS 405/2-18(1) (West 2020)). However, under the Juvenile Court Act, "[a]ny indicated report filed pursuant to the Abused and Neglected Child Reporting Act shall be admissible in evidence." 705 ILCS 405/2-18(4)(b) (West 2022).

¶ 24        Counsel notes, in *In re G.V.*, 2018 IL App (3d) 180272, ¶¶ 26-27, 115 N.E.3d 1131, the Third District held a DCFS investigatory report containing information received from a Connecticut agency was not admissible as an indicated report at an adjudicatory hearing. The Third District concluded the DCFS investigatory report did not qualify as an indicated report because it contained "substantial amounts of information that was unverified and lacked any supporting documentation." *G.V.*, 2018 IL App (3d) 180272, ¶ 30. The trial court explained, "In essence, we have the placement supervisor testifying to information that the investigators discovered while in phone conversations with an unnamed caseworker at an unnamed agency in Connecticut." *G.V.*, 2018 IL App (3d) 180272, ¶ 31. The court asserted "double and triple

hearsay" is not admissible "solely on the basis that the information is part of a report characterized as an indicated report by DCFS." *G.V.*, 2018 IL App (3d) 180272, ¶ 32.

¶ 25 As counsel explains, the three group exhibits containing indicated reports in this case were admissible under section 2-18(4)(b) of the Juvenile Court Act (705 ILCS 405/2-18(4)(b) (West 2022)). Unlike the reports introduced in *G.V.*, the indicated reports in this case did not contain information from an out-of-state agency but were reports directly from DCFS workers and child protection investigators. The group exhibits included certificates of authenticity completed by DCFS employees. The reports at issue here fall within the exception for "indicated report[s] filed pursuant to the Abused and Neglected Child Reporting Act." 705 ILCS 405/2-18(4)(b) (West 2022).

¶ 26 The other exhibits introduced by the State consist of certified copies of court documents, which were admissible under Illinois Rule of Evidence 902(4) (eff. Sept. 28, 2018). No clear or obvious error could be established as to the admissibility of the exhibits submitted by the State in this case, as required to satisfy the plain error rule. Based on this record, we agree with appellate counsel no claim of arguable merit can be raised challenging the trial court's admission of the State's exhibits.

¶ 27 B. Adjudication of Neglect

¶ 28 At the adjudicatory hearing, the trial court considers only whether the minor is abused, neglected, or dependent. *A.P.*, 2012 IL 113875, ¶ 19. Section 2-3(1)(b) of the Juvenile Court Act defines a neglected minor to include "any minor under 18 years of age *** whose environment is injurious to the minor's welfare." 705 ILCS 405/2-3(1)(b) (West 2022). The term "injurious environment" is "an amorphous concept that cannot be defined with particularity," but it generally includes the breach of a parent's duty to provide his or her children with a safe and

nurturing shelter. *In re Arthur H.*, 212 Ill. 2d 441, 463, 819 N.E.2d 734, 746-47 (2004). Neglect cases are "*sui generis*, and must be decided on the basis of their unique circumstances." *Arthur H.*, 212 Ill. 2d at 463.

¶ 29    The State bears the burden of proving allegations of neglect by a preponderance of the evidence, thus requiring the State to establish the allegations are more probably true than not. *In re Z.L.*, 2021 IL 126931, ¶ 61, 190 N.E.3d 193. A trial court's finding of neglect will not be reversed on appeal unless it is against the manifest weight of the evidence. *A.P.*, 2012 IL 113875, ¶ 17. Under the manifest weight standard, "the reviewing court gives deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and the witnesses and has a degree of familiarity with the evidence that a reviewing court cannot possibly obtain." (Internal quotation marks omitted.) *In re J.V.*, 2018 IL App (1st) 171766, ¶ 222, 115 N.E.3d 1099. A court's finding of neglect is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *J.V.*, 2018 IL App (1st) 171766, ¶ 221.

¶ 30    In this case, the evidence established both respondent and the minors' father had significant histories of domestic violence. The minors' father stipulated to count II of the petitions, which alleged his acts of domestic violence placed the minors at risk of harm.

¶ 31    As to respondent, the trial court noted the exhibits included a petition for an order of protection filed by the minors' father. The petition described respondent's acts of domestic violence, including attempting to attack the minors' father with a knife, threatening to kill him, and trying to hit him with her truck. The State also introduced certified copies of criminal complaints charging respondent with multiple offenses, including aggravated assault (720 ILCS 5/12-2(c)(1) (West 2022)) and domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)).

Although respondent denied the State's allegations, the court found her testimony was not credible because she "minimize[d] domestic violence" between the parties. It is well-established a reviewing court "must not substitute its judgment for that of the trial court regarding the credibility of witnesses." *In re D.F.*, 201 Ill. 2d 476, 499, 777 N.E.2d 930, 943 (2002). The court's findings on the counts alleging domestic violence are sufficient by themselves to support the adjudication of neglect as to each minor. See *In re Faith B.*, 216 Ill. 2d 1, 14, 832 N.E.2d 152, 159 (2005) ("Only a single ground for neglect need be proven, and thus when the circuit court has found a minor neglected on several grounds, we may affirm if any of the circuit court's bases of neglect may be upheld.").

¶ 32 In her testimony, respondent also denied leaving the children alone, but, again, the trial court found her testimony was not credible. Respondent did not give a clear explanation of what she was doing or where she was located when the police officers arrived and found the children unsupervised. The court concluded respondent was "nowhere around those children, and they were alone" when the officers arrived.

¶ 33 In sum, the only evidence presented by respondent in this case was her own testimony, and the trial court repeatedly found it lacked any credibility. The manifest weight of the evidence clearly supported the court's adjudication of neglect as to each of the minors in this case, making any claim to the contrary frivolous.

¶ 34 C. Dispositional Order

¶ 35 At the dispositional hearing, the trial court determines whether the best interests of the minor and the public require making the minor a ward of the court. 705 ILCS 405/2-22(1) (West 2022). The party requesting the finding must show by a preponderance of the evidence the parent is unable to care for, protect, train, or discipline the child. *In re Daniel G.*, 2021 IL App

(1st) 210640, ¶ 58, 193 N.E.3d 283. The best interest of the child is the court's overriding concern in entering a dispositional order. *In re M.P.*, 408 Ill. App. 3d 1070, 1073, 945 N.E.2d 1197, 1200 (2011). A court's dispositional order will not be reversed on appeal unless its findings of fact are against the manifest weight of the evidence or it abused its discretion by selecting an inappropriate dispositional order. *In re A.S.*, 2014 IL App (3d) 130163, ¶ 21, 9 N.E.3d 615. A court's finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or it is unreasonable, arbitrary, or not based on the evidence presented. *D.F.*, 201 Ill. 2d at 498.

¶ 36     In this case, the trial court took judicial notice of the integrated assessment and the caseworker reports without any objection by respondent. The integrated assessment required respondent to complete random drug screenings, complete domestic violence services, participate in individual psychotherapy, complete a parenting education course, participate in parent coaching, and participate in supervised visitation. The integrated assessment was completed on February 14, 2024. The subsequent caseworker reports indicated respondent was arrested on February 2, 2024, and released from custody on April 5, 2024. Thus, respondent was incarcerated for most of the time between the completion of the integrated assessment and the dispositional hearing conducted on April 24, 2024.

¶ 37     Although defense counsel proffered respondent participated in a parenting class while incarcerated, there was no evidence she had completed or even started the other recommended services. According to counsel's proffer, respondent believed the agency was responsible for any delay in starting her services, but the evidence shows she was incarcerated for almost the entire time between the completion of the integrated assessment and the dispositional hearing. Respondent's incarceration necessarily impacted her ability to participate

in services. Time spent incarcerated is not excluded from a determination of reasonable progress at a termination proceeding. See *In re F.P.*, 2014 IL App (4th) 140360, ¶ 89, 19 N.E.3d 227. The same would be true at the dispositional stage, where parental rights were not even at issue. The trial court found respondent had not made sufficient progress toward completion of the required services and was currently unfit or unable to care for the minors. The finding of the court was not against the manifest weight of the evidence. Accordingly, we agree with appellate counsel no potentially meritorious argument can be made challenging the court's dispositional order.

¶ 38                                III. CONCLUSION

¶ 39        For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 40        Affirmed.